**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DECKER CONSTRUCTION CO., | : | CASE NO. 2:18-cv-00727 |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| vs. | : | MAGISTRATE JUDGE ELIZABETH P. DEVERS |
| WESEX CORPORATION, *et al.,* | : | |
| Defendants, | : | |
| vs. | : | |
| **GREGORY KOLEDIN** 319 Buhl Blvd. Sharon, Pennsylvania 16146, | : | |
| and | : | |
| **MELANIE PANUTSOS** 3401 Gass Ave. Pittsburgh, Pennsylvania 15212, | : | |
| and | : | |
| **MARK SCHRADER** 1040 Perry Highway Mercer, Pennsylvania 16137, | : | |
| Third Party Defendants. | : | |

---

**CCL LABEL, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT,**
**COUNTERCLAIM AGAINST PLAINTIFF, CROSS-CLAIM AGAINST WESEX CORP.**
**AND THIRD PARTY COMPLAINT**

**(*Jury demand endorsed hereon*)**

---

For its answer to Plaintiff Decker Construction Co.'s ("Decker") Complaint, Defendant

CCL Label, Inc. ("CCL"):

1.      States that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 1.

2.      States that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 2.

3.      Admits that its principal place of business is in Framingham, Massachusetts, and denies all remaining allegations contained in paragraph 3.

4.      Admits that CCL entered into a Design-Builder Agreement with Wesex.  In further answering, CCL states that the Design-Builder Agreement speaks for itself and denies any characterizations inconsistent with its terms.  CCL denies all remaining allegations in paragraph 4.

5.      States that the allegations set forth in paragraph 5 of the Complaint are not asserted against CCL and therefore require no response.  To the extent a response is deemed required, CCL states that the Subcontract Agreement attached to the Complaint speaks for itself, and denies any allegations contained in paragraph 5 inconsistent therewith.  In further answering, CCL states that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 5 regarding the trueness and accuracy of the Subcontract Agreement attached to the Complaint.

6.      States that the allegations set forth in paragraph 6 of the Complaint are not asserted against CCL and therefore require no response.  To the extent a response is deemed required, CCL states that the Subcontract Agreement attached to the Complaint speaks for itself, and denies any allegations contained in paragraph 6 inconsistent therewith.  In further answering, CCL states that it is without sufficient knowledge to either admit or deny the remaining allegations contained in paragraph 6.

7.      States that the allegations set forth in paragraph 7 of the Complaint are not asserted against CCL and therefore require no response.  To the extent a response is deemed required, CCL states that the Subcontract Agreement attached to the Complaint speaks for itself, and denies any allegations contained in paragraph 7 inconsistent therewith.  In further answering, CCL states that it is without sufficient knowledge to either admit or deny any remaining allegations contained in paragraph 7.

8.      States that the allegations set forth in paragraph 8 of the Complaint are not asserted against CCL and therefore require no response.  To the extent a response is deemed required, CCL states that the Subcontract Agreement attached to the Complaint speaks for itself, and denies any allegations contained in paragraph 8 inconsistent therewith.  In further answering, CCL states that it is without sufficient knowledge to either admit or deny any remaining allegations contained in paragraph 8.

9.      States that the allegations contained in paragraph 9 of the Complaint set forth legal conclusions, specifically the allegation regarding whether Decker substantially performed its obligations under its Subcontract Agreement with Wesex, to which a response is neither required nor appropriate.  To the extent a response is deemed required, CCL states that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 9.

10.      States that the allegations set forth in paragraph 10 of the Complaint are not asserted against CCL and therefore require no response.  To the extent a response is deemed required, CCL states that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 10.

11.      CCL states that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 11.

12. CCL states that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 12.

13. CCL states that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 13.

14. CCL states that it is without sufficient knowledge to either admit or deny the allegations contained in paragraph 14.

### COUNT ONE – Breach of Contract (Wesex)

15. Incorporates by reference, as if fully rewritten, its responses contained in paragraphs 1 through 14 above.

16. States that the allegations set forth in paragraph 16 of the Complaint are not asserted against CCL and therefore require no response.

17. States that the allegations set forth in paragraph 17 of the Complaint are not asserted against CCL and therefore require no response.

18. States that the allegations set forth in paragraph 18 of the Complaint are not asserted against CCL and therefore require no response.

### COUNT TWO – Unjust Enrichment (CCL)

19. Incorporates by reference, as if fully rewritten, its responses contained in paragraphs 1 through 18 above.

20. Denies the allegations contained in paragraph 20 of the Complaint.

21. Denies the allegations contained in paragraph 21 of the Complaint.

22. Denies the allegations contained in paragraph 22 of the Complaint.

23. Denies the allegations contained in paragraph 23 of the Complaint.

24. Denies the allegations contained in paragraph 24 of the Complaint.

## COUNT THREE – Ohio's Prompt Pay Act (Wesex)

25.     Incorporates by reference, as if fully rewritten, its responses contained in paragraphs 1 through 24 above.

26.     States that the allegations set forth in paragraph 26 of the Complaint are not asserted against CCL and therefore require no response.

27.     States that the allegations set forth in paragraph 27 of the Complaint are not asserted against CCL and therefore require no response.

28.      States that the allegations set forth in paragraph 28 of the Complaint are not asserted against CCL and therefore require no response.

29.     States that the allegations set forth in paragraph 29 of the Complaint are not asserted against CCL and therefore require no response.

30.     States that the allegations set forth in paragraph 30 of the Complaint are not asserted against CCL and therefore require no response.

31.     Denies each and every allegation not specifically admitted herein.

## ANSWER TO PRAYER FOR RELIEF

32.     CCL denies that Decker is entitled to the relief requested in its prayer for relief.

## AFFIRMATIVE DEFENSES

CCL asserts the following affirmative defenses.  By asserting these defenses, CCL does not assume the burden of proof with respect to any issue as to which applicable law does not place the burden on CCL.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Decker's claim is barred, in whole or part, by the doctrines of waiver, estoppel, laches, and other pertinent equitable principles.

## THIRD DEFENSE

Decker's claim is barred, in whole or part, by the defense of unclean hands.

## FOURTH DEFENSE

Decker's claim is barred, in whole or part, by the defense of ratification and/or accord and satisfaction, novation and/or payment.

## FIFTH DEFENSE

No act or omission on the part of CCL was the proximate, legal, direct or substantial cause of, or contributing factor to, Decker's alleged injuries.

## SIXTH DEFENSE

To the extent Decker sustained damages alleged in the Complaint, Decker's recovery may be barred and/or limited by its failure to mitigate any damages allegedly sustained.

## SEVENTH DEFENSE

Any and all injuries and damages of which Decker complains were caused by the separate, independent and/or negligent actions or inactions of third parties over whom CCL exercised no control and with whom CCL had no relationship.

## EIGHTH DEFENSE

Decker's claim is barred in whole or in part by the express terms the Subcontract Agreement and its material breaches of the same.

## NINTH DEFENSE

Decker's claim is barred in whole or in part by its failure to satisfy a condition precedent.

**TENTH DEFENSE**

Decker's claims are barred in whole or in part by setoff of amounts CCL already paid for its work.

**ELEVENTH DEFENSE**

Any purported damages must be set off against amounts owed by Decker to CCL.

**TWELFTH DEFENSE**

Decker's claims are barred in whole or in part by the doctrines of setoff, recoupment and offset.

**THIRTEENTH DEFENSE**

Decker's claims are barred in whole or in part by lack of privity.

**FOURTEENTH DEFENSE**

Decker's claims are barred in whole or in part because Decker would be unjustly enriched if permitted to obtain the recovery it seeks from CCL.

**FIFTEENTH DEFENSE**

Decker's claim is barred in whole or in part by its failure to provide adequate notice of its claims and/or waiver.

**SIXTEENTH DEFENSE**

Decker's claims are barred in whole or in part by economic loss doctrine.

**SEVENTEENTH DEFENSE**

CCL reserves the right to amend its answer and assert additional defenses should that become necessary or appropriate as discovery is conducted and this case proceeds.

**WHEREFORE,** CCL respectfully requests that this Court dismiss the Complaint, deny Decker all the relief requested herein, and award CCL its costs and fees and such further relief as the Court deems just and proper.

Dated: August 13, 2018                            Respectfully submitted,

                                               */s/ Jonathon Korinko*
                                               Jonathon Korinko, Esq. (0088407)
                                             Benesch, Friedlander, Coplan & Aronoff LLP
                                             200 Public Square, Suite 2300
                                             Cleveland, OH 44114-2378
                                             (216) 363-4500 Telephone
                                             (216) 363-4588 Telefax
                                             E-Mail: jkorinko@beneschlaw.com

                                             *Counsel for Defendant CCL Label Inc.*

## COUNTERCLAIM AGAINST DECKER CONSTRUCTION CO.

For its Counterclaim against Decker Construction Co. ("Decker"), CCL Label, Inc. ("CCL") states as follows:

### THE PARTIES

1.      CCL is a corporation organized under the laws of Michigan, with its principal place of business in Framingham, Massachusetts.

2.      Decker is a corporation organized under the laws of Ohio, with its principal place of business in Franklin County, Ohio.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. CCL and Decker are citizens of different states and the amount in controversy is more than $75,000.

4.      Venue is proper pursuant to 28 U.S.C. § 1391, because the events giving rise to CCL's claims occurred in Licking County, Ohio, within the Southern District of Ohio, Eastern Division, and Decker is subject to personal jurisdiction in this district.

### COUNT ONE
### Declaratory Judgment

5.      CCL incorporates by reference as if fully rewritten herein each and every allegation set forth in Complaint Paragraphs 1 through 4.

6.      On or around April 21, 2016, CCL entered into the Design-Builder Agreement with Wesex Corp. ("Wesex") for the new construction of CCL's New Production and Office Facility on real property owned by CCL and located New Albany, Ohio 44333 ("Project").

7.      On August 23, 2016, CCL's executed notice of commencement was filed with the Licking County Recorder's Office.  A true and accurate copy of CCL's notice of commencement is attached hereto as **Counterclaim Exhibit A**.

8.      Decker was one of Wesex's subcontractors on the Project.

9.      Decker was not in privity of contract with CCL for the work it allegedly performed on the Project.

10.     On January 10, 2018, Decker filed an Affidavit for Mechanic's Lien against CCL and the Project for the same amount sought in this matter—One Hundred Forty-Three Thousand, Three Hundred and Eighty-Four Dollars ($143,384.00) ("Lien").  A true and accurate copy of Decker's Lien is attached hereto as **Counterclaim Exhibit B**.

11.     According to its Affidavit for Mechanic's Lien, Decker commenced work on the Project on May 25, 2017.

12.     Pursuant to Oh. Rev. Code §1311.05, Decker was required to file a notice of furnishing to preserve its lien rights within twenty-one (21) days of commencing work on the Project.

13.     Decker has never filed notice of furnishing for the Project, which would have notified CCL of Decker's work and involvement with the Project.

14.     CCL informed Decker that it never provided a notice of furnishing and that the Lien is therefore invalid.

15.     Decker has nonetheless failed to take any steps to remove its invalid Lien.

16.     CCL seeks declaratory relief in the form of a judgment that the Lien is invalid because Decker failed to file a notice of furnishing and therefore filed its Lien in violation of Oh. Rev. Code §1311.05.

17.     There is an actual, justiciable controversy between the parties in this case and a declaration of the rights of the parties is necessary to terminate the controversy.

18.     As a result of such controversy, pursuant 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, CCL seeks a declaration and judicial interpretation from this Court on the issues addressed in this Count and the rights and obligations of the parties to this action.

## COUNT TWO
### Slander of Title

19.     CCL incorporates by reference as if fully rewritten herein each and every allegation set forth in Complaint Paragraphs 1 through 18.

20.     As a direct and proximate result, Decker's Lien constitutes a false and malicious defamation of the real property owned by CCL related to the Project resulting in special damages to CCL.

21.     Decker's Lien was executed and recorded in bad faith.  Specifically, Decker knew or should have known that the lien was invalid because Decker knew that it failed to provide CCL with a notice of furnishing.

22.     Even after CCL informed Decker that the Lien is invalid due to Decker's failure to file a notice of furnishing, Decker has refused to remove the Lien.

23.     As a direct and proximate result of Decker's malicious and bad faith slander of title to CCL's real property, CCL is entitled to recover compensatory and special damages to be more fully proven at trial, as well as CCL's attorney fees, costs and expenses.

### PRAYER FOR RELIEF

WHEREFORE, CCL requests the Court enter judgment in its favor against Decker, and issue a declaration of CCL's rights as requested herein, and all further relief to which it may be entitled.

Dated:  August 13, 2018                    Respectfully submitted,

                                           */s/ Jonathon Korinko*
                                           Jonathon Korinko, Esq. (0088407)
                                           Benesch, Friedlander, Coplan & Aronoff
                                           LLP
                                           200 Public Square, Suite 2300
                                           Cleveland, OH   44114-2378
                                           (216) 363-4500 Telephone
                                           (216) 363-4588 Telefax
                                           E-Mail:  jkorinko@beneschlaw.com

                                           *Counsel for Defendant CCL Label Inc.*

## CROSS-CLAIM AGAINST WESEX CORP. AND THIRD PARTY COMPLAINT AGAINST GREGORY KOLEDIN, MELANIE PANUTSOS AND MARK SCHRADER

For its Cross-Claim against Wesex Corporation ("Wesex") and Third Party Complaint against Gregory Koledin, Melanie Panutsos and Mark Schrader (collectively "Individual Defendants"), CCL Label, Inc. ("CCL") states as follows:

### THE PARTIES

1.      CCL is a corporation organized under the laws of Michigan, with its principal place of business in Framingham, Massachusetts.

2.      Wesex is a corporation organized under the laws of Pennsylvania, with its principal place of business in West Middlesex, Pennsylvania.

3.      Gregory Koledin is the President and CEO of Wesex and a resident of Pennsylvania.

4.      Upon information and belief, Defendant Koledin is the sole owner of Wesex.

5.      Melanie Panutsos is the Lead Architect and Chief Design Officer at Wesex and a resident of Pennsylvania.

6.      Mark Schrader is the former Chief Financial Officer at Wesex and a resident of Pennsylvania.  Defendant Schrader is also a Certified Public Accountant.

7.      At all times relevant, Defendants Panutsos and Schrader were officers at Wesex.

### JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  CCL and Wesex are citizens of different states and the amount in controversy is more than $75,000.  Likewise, CCL and the Individual Defendants are citizens of different states and the amount in controversy is more than $75,000.

9.      Venue is proper pursuant to 28 U.S.C. § 1391, because the events giving rise to CCL's claims occurred in Licking County, Ohio, within the Southern District of Ohio, Eastern Division, and Wesex and the Individual Defendants are subject to personal jurisdiction in this district.

## NATURE OF THE ACTION

10.      CCL brings this suit against Wesex, its former design builder and general contractor, for damages caused by Wesex's breach of the Design-Builder Agreement between CCL and Wesex.  In addition, CCL asserts claims for damages caused by fraudulent misrepresentations that Wesex and its officers, the Individual Defendants, made to induce CCL to take actions it otherwise would not of taken.

## FACTUAL BACKGROUND

**Wesex Breaches its Contractual Obligations to CCL.**

11.      On or around April 21, 2016, CCL entered into the Design-Builder Agreement with Wesex for the new construction of CCL's New Production and Office Facility ("Project") on real property owned by CCL and located New Albany, Ohio 44333 ("Agreement").  A true and correct copy of the Agreement is attached hereto as **Cross-Claim Exhibit A** and incorporated herein by reference.

12.      The Agreement obligated Wesex to "perform all design and construction services, and provide all material, equipment, tools and labor, necessary to Work described in and reasonably inferable from the Contract Documents" (collectively, "Contract Work").  (*See* Agreement, ¶ 1.1.)

13.     The Agreement further provided that Wesex would receive payment for cost of the work plus a fee, but with a guaranteed maximum contract price not to exceed $6,961,350.00 ("Contract Price").  (*See* Agreement, ¶ 6.6.1.1.)

14.     Wesex was obligated to substantially complete design and construction of the Project within One-Hundred and Ninety-Six (196) days from the date when CCL obtained all the required municipal and regulatory approvals.  (*See* Agreement, ¶ 5.2.1.)  The Agreement identified September 15, 2016 as the substantial completion date for Wesex's Contract Work ("Contract Time").  (*See* Agreement, ¶ 5.2.2.)

15.     The Agreement obligated Wesex to submit with every Application for Payment fully executed lien waivers from Wesex and any and all subcontractors, sub-subcontractors, laborers, and material suppliers, which covered all work paid as a result for the previous month's Application for Payment.  (*See* Agreement, ¶ 6.1.2.)

16.     The Agreement also obligated Wesex to represent with each Application for Payment "that the Work described herein has been performed consistent with the Contract Documents, has progressed to the point indicated in the Application for Payment, and that title to all Work will pass to Owner free and clear of all claims, liens, encumbrances, and security interests upon [Wesex's] receipt of payment."  (*See* Agreement, ¶ 6.2.4.)

17.     Indeed, the Agreement obligated Wesex to complete the Contract Work for CCL for an amount not to exceed the Contract Price and free and clear of mechanics' liens by Wesex's and its subcontractors, sub-subcontractors, laborers, and material suppliers.  (*See* Agreement, Article 6.)

18.     The Agreement further obligated Wesex to defend, indemnify and hold harmless CCL against any claims or mechanics' liens brought against CCL or the Project, and to obtain a

release of the any such claims or mechanics' liens within three (3) days, including, but not limited to, furnishing a mechanic's lien bond.  If Wesex failed to do so, the Agreement gave CCL the right to discharge the lien or claim and hold Wesex liable for the costs and expenses, including attorneys' fees, that CCL incurred as a result.  (*See* Agreement, ¶ 7.3.1.)

19.     Furthermore, changes to the scope of work, Contract Price or Contract Time required CCL's written approval pursuant to the change order procedure and construction change directive procedure set forth in Article 9 of the Agreement's General Conditions.

20.     Aside from one change order that CCL approve and paid, while the Project was on-going, Wesex failed to submit any additional Change Orders requesting the performance of additional work outside the scope of the Agreement, an increase in the Contract Price, or an increase in the Contract Time.

21.     Through no fault or responsibility of CCL or its agents, Wesex failed to substantially complete construction of the Project until early 2017—a several month delay to obtaining the substantial completion date provided for in the Agreement—and failed to perform final completion and close-out of the Project by completing all punch-list items, furnishing CCL lien waivers, manufacturer warranties, and operational manuals.

22.     At all material times during construction of the Project, CCL properly processed each monthly Application for Payment submitted by Wesex in accordance with the Agreement's payment terms.

23.     During the Project, Wesex also authorized change order work for its subcontractors, sub-subcontractors, laborers, and material suppliers for additional labor and materials that was either not presented to CCL for approval, or rejected by the CCL because the labor and material was included in the Contract Work.   Accordingly, Wesex was not and is not entitled to an

additional payment or an increase in the Contract Time pursuant to the express terms of the Agreement.

24.     Wesex also failed to submit executed lien waivers for its subcontractors, sub-subcontractors, laborers, and material suppliers with its monthly Applications for Payment.

## Wesex and the Individual Defendants Made Fraudulent Misrepresentations to Induce Payments from CCL.

25.     Throughout the Project, Wesex submitted Applications for Payment to CCL. Wesex represented that the Applications for Payment covered work performed by its subcontractors, sub-subcontractors, laborers and material suppliers on the Project.

26.     Unbeknownst to CCL, however, Wesex was in fact not paying its subcontractors, sub-subcontractors, laborers and material suppliers with the funds CCL paid to Wesex through the monthly Applications for Payment.  Instead, Wesex and the Individual Defendants paid themselves with the money Wesex received from CCL for work performed by Wesex's subcontractors, sub-subcontractors, laborers and material suppliers.

27.     In other words, Wesex stole, converted, and misappropriated the money CCL provided Wesex to pay for the work performed by the subcontractors, sub-subcontractors, laborers and material suppliers on the Project.

28.     Wesex and the Individual Defendants knew, however, that CCL would have terminated Wesex if CCL discovered that Wesex's subcontractors, sub-subcontractors, laborers and material suppliers were not being paid with the money Wesex received from the monthly Applications for Payment.

29.     To ensure that Wesex was not terminated and that payments continued to flow from CCL, Wesex submitted affidavits falsely stating that Wesex had paid all of its subcontractors, sub-

subcontractors, laborers and material suppliers and that Wesex was not exposing CCL to any risk of claims, lawsuits or liens on the Project.

30.     Indeed, acting on behalf of Wesex, the Individual Defendants submitted sworn and notarized affidavits that the subcontractors, sub-subcontractors, laborers and material suppliers were being paid in full with the money received from each of its Applications for Payment, despite knowing Wesex did not intend to pay for the labor and materials provided by its subcontractors, sub-subcontractors, laborers and material suppliers.

31.     Acting as Wesex's Chief Financial Officer, Defendant Schrader, a Certified Public Accountant, knowingly signed and executed the fraudulent affidavits attached to the Applications for Payment up to, and including, Application for Payment No. 17.

32.     Upon information and belief, prior to the submission of each Application for Payment, Defendants Koledin and Panutsos instructed Defendants Schrader to execute the false affidavits in order to induce CCL to continue its business relationship with Wesex and to continue paying the Applications for Payment submitted by Wesex.

33.     Alternatively, Defendants Koledin and Panutsos, at the very least, knew and approved of Defendant Schrader's fraudulent conduct and were therefore complicit in the fraud scheme.

34.     Wesex and the Individual Defendants, at all times, knew that the affidavits being submitted to CCL with the Applications for Payment were false.

35.     The falsely executed affidavits, along with the diversion of funds intended for Wesex's subcontractors, sub-subcontractors, laborers and material suppliers, were both material to the transaction and knowingly false with the intent of misleading and inducing CCL into making payments to Wesex and continuing the business relationship.

36.     CCL justifiably relied on the falsely executed affidavits because each were executed, sworn and notarized by Wesex and Defendant Schrader and this reliance caused damages to CCL.

37.     Indeed, but for Wesex's and the Individual Defendants' fraudulent activities and falsely executed affidavits, CCL would have terminated Wesex, and therefore, denied Wesex the financial gains that it fraudulently and purposefully obtained.

38.     Through Wesex's and the Individual Defendants' wrongful and fraudulent conduct, CCL was induced to continue its obligations under the Agreement when it would not otherwise have done so.

39.     Wesex's subcontractors, sub-subcontractors, laborers and material suppliers—including, but not limited to, RSI Metal Building Services, Nickolas Savko & Sons, Inc., Federal Elite Heating & Cooling, Mock Woodworking and Tarrier Steel Company—have asserted claims and some have recorded mechanic's liens against the Project.  In addition, the plaintiff in this action, Decker Construction Company, was also Wesex's subcontractor on the Project and filed this lawsuit against CCL alleging a claim for unjust enrichment in connection with the Project. These claims stem from the pervasive fraud perpetuated on CCL by Wesex and the Individual Defendants.

40.     Indeed, through the Individual Defendants' fraudulent scheme, Wesex paid itself nearly one-million dollars ($1,000,000) in excessive fees with money CCL paid to Wesex pursuant to Applications for Payment for work performed by Wesex's subcontractors, sub-subcontractors, laborers and material suppliers.

**Wesex Files Improperly Files an Affidavit for Mechanic's Lien on the Project.**

41.     On July 19, 2018, Wesex filed an Affidavit for Mechanic's Lien against the Project in the amount of $2,097,731.20 (the "Lien"). The Lien presumably covers the amount claimed by Wesex's subcontractors, sub-subcontractors, laborers and materials suppliers, which CCL has already paid but that Wesex stole from its subcontractors. The Lien is also believed to cover unapproved and/or denied change order work Wesex performed and/or caused to be performed.

42.     On or around August 7, 2018, CCL first discovered Wesex had filed the Lien on the Project. To date, Wesex has never furnished any notice to CCL that it filed the Lien much less served CCL with a copy of the Lien.

43.     The Lien provided that Wesex began its work on the Project on May 2, 2016, and completed its work on April 30, 2018. A true and accurate copy of the Lien is attached as **Cross-Claim Exhibit B.**

44.     On March 30, 2018, however, Construction Specialties, Inc. was the last of the Wesex's subcontractors to perform any work on the Project. Meanwhile, Wesex has not performed or supervised any work on the Project, or even been on site, since February 2018 when it removed screens from the HVAC units.

45.     Thus, the April 30, 2018 completion date contained in the Affidavit for Mechanic's Lien executed by Defendant Koledin is false and not correct. Defendant Koledin knew at the time he executed the lien that the date was false.

46.     Regardless, pursuant to Oh. Rev. Code § 1311.01, Wesex was required to file its lien within seventy-five (75) days from is last day of work. Based on the April 30, 2018 completion date contained in the Affidavit for Mechanic's Lien, Wesex was required to file its lien no later than July 14, 2018.

47.    While CCL did provide Wesex with several extensions to file its lien, the last agreed upon extension expired July 16, 2018.

48.    Yet, Wesex did not file the Lien until July 19, 2018.

49.    On its face, the Lien is untimely and, therefore, invalid.

50.    Additionally, Wesex has been paid in full for the work it performed for CCL and on this Project, and is currently owed nothing.  Thus, in addition to being filed out-of-time, the Lien grossly exaggerates the amount Wesex is owed.

**Defendants Koledin, Panutsos and Schrader Are Personally Liable for Wesex's Fraud.**

51.    Defendants Koledin, Panutsos and Schrader were at all times agents of Wesex and, as agents of Wesex, each separately committed the fraudulent acts described above within the course and scope of their employment.

52.    Defendants Koledin, Panutsos and Schrader are therefore personally liable for the above-described fraudulent acts that they committed while acting as agents of Wesex.

**Defendant Koledin's Control Over Wesex Is So Complete that Wesex Has No Separate Mind, Will, or Existence Of Its Own.**

53.    Defendant Koledin completely controlled Wesex to such a degree that Wesex had no separate mind, will, or existence of its own.

54.    Upon information and belief, Defendant Koledin exercised his control over Wesex to perpetrate the fraud on CCL.  Specifically, Defendant Koledin, along with Defendant Panutsos, instructed Defendant Schrader to submit fraudulently executed affidavits in order to obtain payments from CCL.

55.    Upon information and belief, Defendant Koledin developed and orchestrated the fraud scheme against CCL.

56.     Upon information and belief, Defendant Koledin used his control over Wesex to regularly divert, shuffle and transfer money received from CCL and that was to be paid to Wesex's subcontractors to, among other things, pay himself as well as Defendants Panutsos and Schrader.

57.     Despite the misrepresentations to the contrary, instead of paying Wesex's subcontractors and protecting CCL's property interest, Defendant Koledin retained funds received from CCL to extract fees that were grossly in excess to which Wesex was entitled.

## COUNT ONE
### Breach of Contract Against Wesex

58.     CCL incorporates by reference as if fully rewritten herein each and every allegation set forth in Complaint Paragraphs 1 through 57.

59.     On or around April 21, 2016, CCL and Wesex entered into the Agreement described above and attached hereto as **Cross-Claim Exhibit A**.

60.     Wesex has materially breached the terms and conditions of the Agreement by, including, but not limited to:  (i) failing to complete the Project within the Contract Time and the Contract Price; (ii) failing to furnish sufficient materials, labor and supervision to complete the Project within the Contract Time and Contract Price; (iii) failing to pay Wesex's subcontractors, sub-subcontractors, laborers and material suppliers after receiving payment from CCL; (iv) delivery of unsatisfactory work and damage to completed work; (v) failing to complete the in compliance with the Agreement's plans and specifications; (vi) permitting claims and liens to be asserted and filed by Wesex's subcontractors, sub-subcontractors, laborers and material suppliers against CCL and the Project; (vii) authorizing its subcontractors, sub-subcontractors, laborers and material suppliers to perform change order work that was either not approved or rejected by CCL; and (x) otherwise disregarding and ignoring Wesex's obligations to CCL under the Agreement.

61.     CCL has fully performed all obligations required under the terms and conditions of the Agreement, and has met all conditions precedent to the performance by Wesex.

62.     As a direct and proximate result of Wesex's material breaches of the Agreement, CCL has incurred and will continue to incurred direct compensatory damages related to completion of the Project, delays associated with Wesex's failure to achieve substantial completion by the Contract Time, defending against claims asserted against CCL and the Project and removal of mechanic's liens filed on the Project, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be more fully proven at trial, in addition to prejudgment interest, post-judgment interest and the costs of this action.

63.     In addition, and as described above, Wesex's breach has caused CCL to incur significant costs, attorneys' fees and litigation expenses in order to remove and defend against mechanic's liens filed and threatened on the Project as well as claims asserted against CCL and the Project by Wesex's subcontractors, sub-subcontractors, laborers and material suppliers, including, but not limited to, defending the claim asserted by Decker against CCL in this action, all of which are recoverable under the terms of the Agreement.

64.     Therefore, CCL is entitled to indemnity under the Agreement from Wesex for any damages it has suffered or will suffer due to, but not limited to, Decker's unjust enrichment claims against CCL in this action stemming from Wesex's actions or inactions, including, but not limited to, approving unauthorized work on the Project, and Wesex's refusal to pay, in full or in part, the amounts sought by Decker in this action.

## COUNT TWO
### Fraud Against Wesex and the Individual Defendants

65.     CCL incorporates by reference as if fully rewritten herein each and every allegation set forth in Complaint Paragraphs 1 through 64.

66.     Wesex submitted affidavits to CCL that were executed, sworn and notarized by Defendant Schrader in his capacity as a Certified Public Accountant and Wesex's Chief Financial Officer, and which falsely and fraudulently represented to CCL that Wesex had paid its subcontractors, sub-subcontractors, laborers and material suppliers amounts identified in the Applications for Payment as being owed to the same, despite Wesex and the Individual Defendants knowing they had no intent of making such payments.

67.     Upon information and belief, the false affidavits were submitted at the instruction and/or with the consent of Defendants Koledin and Panutsos.

68.     Instead of paying Wesex's subcontractors and material suppliers, Wesex and the Individual Defendants falsely and fraudulently diverted the funds CCL paid to Wesex for work performed by its subcontractors, sub-subcontractors, laborers and material suppliers to other wrongful uses.

69.     Wesex's and Individual Defendants' representations to CCL were both material and knowingly false and were made with the intent to mislead CCL to rely on the false and fraudulent affidavits in order to induce CCL to continue its business relationship with Wesex as well as to induce CCL to continue issuing payments to Wesex.

70.     CCL justifiably relied on the false and fraudulent affidavits because they were sworn and notarized statements by Wesex's Chief Financial Officer and Certified Public Accountant, Defendant Schrader.

71.     As a direct and proximate result of CCL's justifiable reliance, CCL has incurred compensatory damages in excess of One Million Dollars ($1,000,000.00) to be more fully proven at trial.

72.     Wesex and the Individual Defendants knowingly false submissions of the affidavits to CCL were committed with actual malice and a conscious disregard for the rights of CCL and with knowledge that the false affidavits had a great probability of causing substantial harm to CCL and its property.

73.     As a direct and proximate result, CCL is entitled to recover punitive damages in an amount to be proven at trial, as well as reasonable attorney fees and the costs of this action.

### COUNT THREE
**Action to Pierce the Corporate Veil Against Wesex and Koledin**

74.     CCL incorporates by reference as if fully rewritten herein each and every allegation set forth in Complaint Paragraphs 1 through 73.

75.      Upon information and belief, Defendant Koledin is the sole incorporator and member of Wesex Corp. and carries the title of President and Chief Executive Officer.

76.     Upon information and belief, Wesex is the alter ego of Defendant Koledin, and Defendant Koledin has complete control over Wesex.

77.     Upon information and belief, each act of Wesex described herein was directed by Defendant Koledin, and Wesex is a mere façade for Defendant Koledin's actions.

78.     The members of Wesex organized it for the purpose of committing fraud and illegal acts, and as a method of evading personal liability and as a mechanism to merely shield Wesex and its members, officers, employees, and directors from accountability for their actions.

79.     Upon information and belief, Wesex has now been intentionally undercapitalized to further its purpose of committing fraud and providing a shield to its members, officers, employees, and directors from liability for their outrageous and unlawful conduct.

80.     Defendant Koledin's control over Wesex was so complete that the corporation had no mind, will, or control of its own.

81.     Defendant Koledin exercised his control in order to complete fraudulent acts against CCL, to wit the fraudulent submission of affidavits regarding subcontractor payments and the associated siphoning of funds on behalf of Wesex.  CCL was injured by the acts.

82.     Recognition of Wesex as a corporation distinct from Defendant Koledin would be inequitable or unjust and would result in the derogation of the rights of others to receive damages due to them by virtue of the fraudulent and illegal acts Defendant Koledin performed under the guise of Wesex

83.      It would be manifestly unjust to leave the protection of limited liability intact for Wesex.

84.     CCL is therefore entitled to orders piercing the veil of Wesex to impute its liability to its officers, directors, shareholders, and members.

**COUNT FOUR**
**Declaratory Judgment**

85.     CCL incorporates by reference as if fully rewritten herein each and every allegation set forth in Complaint Paragraphs 1 through 84.

86.     Wesex is in breach of its obligations to CCL under the Agreement, and not entitled to any additional payments from CCL.

87.     Indeed, CCL has paid Wesex the full amount owed under the Agreement.

88.     Nonetheless, Wesex has filed an Affidavit for Mechanic's Lien against CCL and the Project for in excess of Two Million Dollars ($2,000,000.00).  *See* **Cross-Claim Exhibit B**.

89.     In addition, the Lien was filed out of time.  On its face, the Lien states that Wesex completed work on April 30, 2018.  Pursuant to Oh. Rev. Code Ann. § 1311.01, Wesex was required to file its lien within seventy-five (75) days from is last day of work, which according to the Affidavit for Mechanic's Lien would have been July 14, 2018.

90.     Wesex did not file the Lien until July 19, 2018.

91.     CCL seeks declaratory relief in the form of a judgment that: (1) Wesex's alleged mechanic's lien is untimely and invalid; (2) that Wesex is not entitled to foreclose on its alleged lien; and (3) that Wesex has been paid in full for all labor, materials and work provided pursuant to the Agreement.

92.     There is an actual, justiciable controversy between the parties in this case and a declaration of the rights of the parties is necessary to terminate the controversy.

93.     As a result of such controversy, pursuant 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, CCL seeks a declaration and judicial interpretation from this Court on the issues addressed in this Count and the rights and obligations of the parties to this action.

## <u>COUNT FIVE</u>
### Slander of Title Against Wesex and Koledin

94.     CCL incorporates by reference as if fully rewritten herein each and every allegation set forth in Complaint Paragraphs 1 through 93.

95.     On July 19, 2018, Defendant Koledin on behalf of Wesex recorded a mechanic's lien against the Project in the amount of $2,097,731.20 (a copy of the mechanic's lien is attached hereto as **Cross-Claim Exhibit B** and incorporated herein by reference).

96.     As of July 19, 2018, CCL did not owe Wesex any money because CCL had fully paid Wesex all sums owed under the Agreement as well as released its retainage.

97.     Wesex and Defendant Koledin also filed the Lien beyond seventy-five (75) days from its last day of work.

98.     CCL was served a lawsuit from two of Wesex's subcontractors alleging nonpayment for sums CCL had paid Wesex.  CCL has also received notice of numerous

subcontractors, sub-subcontractors and material suppliers recording mechanic's liens against the Project for sums CCL had previously paid to Wesex.

99.     As a direct and proximate result, Wesex's mechanic's lien constitutes a false and malicious defamation of the real property owned by CCL related to the Project resulting in special damages to CCL.

100.     Wesex's Lien was executed and recorded in bad faith.  Specifically, Wesex and Defendant Koledin knew Wesex was not due the amount set forth in the mechanic's lien because Wesex and Defendant Koledin knew Wesex had: (i) executed change orders with its subcontractors, sub-subcontractors, and material suppliers that had been rejected by CCL and were amounts that would never be legally due to Wesex; (ii) failed to pay Wesex's subcontractors, sub-subcontractors and material suppliers after receiving payment from CCL; and (iii) that the Lien was being filed out of time.

101.     As a direct and proximate result of Wesex's malicious and bad faith slander of title to CCL's real property, CCL is entitled to recover compensatory and special damages to be more fully proven at trial, as well as CCL's attorney fees, costs and expenses.

### PRAYER FOR RELIEF

WHEREFORE, CCL requests the Court enter judgment in its favor against Wesex and the Individual Defendants as follows:

(1)     Compensatory damages in excess of $1,500,000 for Wesex's contractual breaches;

(2)     Compensatory damages in excess of $1,000,000 for Wesex's and the Individual Defendants' fraudulent conduct, as well as punitive damages and CCL's attorney fees, costs and expenses;

(3)     An order holding Wesex is Defendant Koledin's alter ego and, therefore, Defendant Koledin is personally liable for all the misconduct alleged herein taken on behalf of Wesex;

(4)     An order declaring Wesex's lien invalid and unenforceable;

(5)      Compensatory and special damages, as well as CCL's attorneys' fees, costs and expenses, caused from the slander to CCL's title by Wesex's filing its invalid lien;

(6)     Pre-judgment and post-judgment interest as provided by the Agreement and/or the applicable law;

(7)     CCL's reasonable attorney's fees, litigation expenses and other costs associated with this action as provided for by the Agreement; and

(8)     Such other relief as the Court deems just and proper.


Dated:  August 13, 2018                              Respectfully submitted,

                                                     */s/ Jonathon Korinko*
                                                     Jonathon Korinko, Esq. (0088407)
                                                     Benesch, Friedlander, Coplan & Aronoff LLP
                                                     200 Public Square, Suite 2300
                                                     Cleveland, OH   44114-2378
                                                     (216) 363-4500 Telephone
                                                     (216) 363-4588 Telefax
                                                     E-Mail:  jkorinko@beneschlaw.com

                                                     *Counsel for Defendant CCL Label Inc.*

## **JURY DEMAND**

CCL demands a trial by jury on all issues so triable.

/s/ *Jonathon J. Korinko*

Jonathon J. Korinko

*Counsel for Defendant CCL Label Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 13, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a notification of such electronic filing to all counsel of record in this case who are registered CM/ECF users and I have served any non-ECF users by first class mail with postage prepaid.

/s/ *Jonathon J. Korinko*
Jonathon J. Korinko

*Counsel for Defendant CCL Label Inc.*