**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DECKER CONSTRUCTION CO., | : | CASE NO. 2:18-cv-00727 |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| vs. | : | MAGISTRATE ELIZABETH P. DEAVERS |
| WESEX CORPORATION, *et al.,* | : | |
| Defendants, | : | |
| vs. | : | |
| GREGORY KOLEDIN, *et al.,* | : | |
| Third-Party Defendants. | : | |

---

**THIRD-PARTY PLAINTIFF CCL LABEL, INC.'S
RESPONSE IN OPPOSITION TO THIRD-PARTY DEFENDANT
MARK SCHRADER'S MOTION TO DISMISS**

---

Respectfully submitted by:

Jonathon Korinko, Esq. (0088407)
Benesch, Friedlander, Coplan & Aronoff
LLP
200 Public Square, Suite 2300
Cleveland, OH  44114-2378
(216) 363-4500 Telephone
(216) 363-4588 Telefax
E-mail:  jkorinko@beneschlaw.com

*Counsel for Defendant and Third-Party
Plaintiff CCL Label, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

FACTS ............................................................................................................... 2

LAW AND ARGUMENT ................................................................................... 4

I.      Legal Standard For Rule 12(b)(2) Motion ................................................ 4

      A.      This Court Has Specific Jurisdiction Over Schrader. ............................. 5

            1.      Ohio's Long-Arm Statute Supports Exercising Jurisdiction
                 Over Schrader. ............................................................................ 5

                 a.      Schrader Transacted Business in Ohio. ........................... 6

                 b.      Schrader Committed Tortious Acts in Ohio. .................... 7

                 c.      Schrader Committed Tortious Acts that Caused
                      Harm in Ohio. .................................................................. 8

            2.      The Exercise Of Jurisdiction Over Schrader Comports With
                 Due Process. ............................................................................. 10

                 a.      Schrader Purposefully Availed Himself in Ohio. .......... 10

                 b.      CCL's Claims Arise From Schrader's Ohio
                      Activities. ......................................................................... 12

                 c.      The Exercise of Jurisdiction Over Schrader is
                      Reasonable. ...................................................................... 13

            3.      The Fiduciary Shield Doctrine is Not Applicable to
                 Schrader. .................................................................................. 14

II.     CCL's Claims Against Schrader Satisfy Rule 12 Pleading Standards ............ 16

        1.      CCL's Complaint Pleads Fraud With Sufficient
            Particularity. ............................................................................. 16

         2.      Schrader's Waiver Argument is Unsupported by Law and
            Outside the Scope of a Rule 12(b)(6) Motion. ............................ 18

         3.      In the Alternative, the Court Should Convert Schrader's
            Motion to a Summary-Judgment Motion and Postpone
            Ruling for Factual Inquiry. ....................................................... 19

CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander Assocs., Inc. v. FCMP, Inc.*,
No. 10-12355, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012) .............................................13

*AlixPartners, LLP v. Brewington*,
836 F.3d 543 (6th Cir. 2016) .................................................................................................10

*Ashton Park Apts., Ltds. v. Avram Lebor*,
252 F. Supp. 2d 539 (N.D. Ohio 2003).................................................................................9, 12

*Balance Dynamics Corp. v. Schmitt Indus., Inc.*,
204 F.3d 683 (6th Cir. 2000) .................................................................................................14

*Beaver Cty. Ret. Bd. v. LCA-Vision, Inc.*,
2009 WL 806714 (S.D. Ohio 2009).......................................................................................19, 20

*Berbruck v. Capital*,
No. 19586, 2000 Ohio App. LEXIS 4668 (Ohio Ct. App. 2000) ...........................................15

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) .................................................................................................12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)................................................................................................................10

*Cincinnati Gas & Electric Co. v. Gen. Elec. Co.*,
656 F. Supp. 49 (S.D. Ohio 1986) .........................................................................................18

*Clark v. Connor*,
82 Ohio St. 3d 309 (1998) ......................................................................................................8

*Coast to Coast Health Care Servs., Inc. v. Meyerhoffer*,
No. 2:10-CV-734, 2012 WL 169963 (S.D. Ohio Jan. 19, 2012) .............................................4

*Collectibles Network, Inc. v. Sterling Commerce (Am.), Inc.*,
No. 3:09-CV-143, 2016 WL 9132294 (E.D. Tenn. Sept. 7, 2016).........................................18

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) ................................................................................................4

*Dayton Superior Corp. v. Yan*,
288 F.R.D. 151 (S.D. Ohio 2012)..........................................................................................8, 9

ii

*Flynn v. Greg Anthony Constr., Co., Inc.*,
    95 F. App'x 726 (6th Cir. 2003) ...............................................................................14

*Franklin Prods., Inc. v. Gen. Nutrition Corp.*,
    No. 2:05-cv-1061, 2007 WL 2462665 (S.D. Ohio, Aug. 27, 2007) .........................................6

*FRC Int'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*,
    2002 WL 31086104 (N.D. Ohio 2002) ...........................................................7, 8, 12

*Gill v. Rana*,
    2017 WL 677056 (Ohio Ct. App. 2017) ......................................................................19

*Herbruck v. LaJolla Capital*,
    No. 19586, 2000 WL 1420282 (Ohio Ct. App. Sept. 27, 2000) ...............................9

*Heritage Funding & Leasing Co.*,
    120 Ohio App. 3d 422 (Ohio Ct. App. 1997) ......................................................15

*Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*,
    943 F. Supp. 825 (N.D. Ohio 1996)........................................................................9

*Hildebrand v. Steck Mfg. Co., Inc.*,
    279 F.3d 1351 (Fed. Cir. 2002)................................................................................6

*In the Matter of: Blue Flame Energy Corp. v. Ohio Dept. of Commerce*,
    171 Ohio App. 3d 514 (Ohio Ct. App. 2006) .......................................................15

*Kehoe Component Sales, Inc. v. Best Lighting Prod., Inc.*,
    No. 2:08-CV-752, 2009 WL 2591757 (S.D. Ohio Aug. 19, 2009) .........................9, 14

*Kostrzewa v. City of Troy*,
    247 F.3d 633 (6th Cir. 2001) .................................................................................20

*Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*,
    53 Ohio St. 3d 73, 559 N.E.2d 477 (1990) ..............................................................6

*Leighton v. Poltorak*,
    No. 1:16-CV-2898-DAP, 2017 WL 1399839 (N.D. Ohio Apr. 19, 2017) .......................13, 14

*Leisure Sys., Inc. v. R&G, Inc.*,
    No. A-1008873, 2011 Ohio Misc. LEXIS 150 (Cty. C.P. 2011).............................7

*MedChoice Fin., LLC v. ADS All. Data Sys., Inc.*,
    857 F. Supp. 2d 665 (S.D. Ohio 2012) .................................................................18

*Mulch Mfg., Inc. v. Advanced Polymer Sols., LLC*,
    No. 2:11-CV-0325, 2012 WL 628521 (S.D. Ohio Feb. 27, 2012) ...................10, 11

*Nat'l City Commercial Capital, Co., LLC v. Evertile Flooring, Inc.*,
  2010 WL 422431 (Hamilton Cty. C.P. 2010) ............................................................7

*Nationwide Life Ins. Co. v. Koresko*,
  No. 2:05-cv-1066, 2007 WL 2713783 (S.D. Ohio Sept. 14, 2007) ..........................14

*NCR Corp. v. PC Connection, Inc.*,
  384 F. Supp. 2d 1152 (S.D. Ohio 2005) ....................................................................5

*Neal v. Janssen*,
  270 F.3d 328 (6th Cir. 2001) ........................................................................10, 12, 13

*NPF XII, Inc. v. Special Care, Inc.*,
  2001 WL 36951418 (S.D. Ohio July 17, 2001) ......................................................7, 15

*Scotts Co. v. Aventis S.A.*,
  145 F. App'x 109 (6th Cir. 2005) ..........................................................................12, 13

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*,
  532 F.3d 496 (6th Cir. 2008) ....................................................................................16

*Sylvester Material, Inc. v. John Carlo, Inc.*,
  No. 3:04CV7686, 2005 WL 1176054 (N.D. Ohio May 17, 2005) ............................10

*Tackett v. M&G Polymers, USA, LLC*,
  561 F.3d 478 (6th Cir. 2009) ....................................................................................20

*Theunissen v. Matthews*,
  935 F.2d 1454 (6th Cir. 1991) ..........................................................................4, 5, 13

*Estate of Thomson v. Toyota Motor Corp. Worldwide*,
  545 F.3d 357 (6th Cir. 2008) ......................................................................................4

*State ex rel. Wallace v. State Bd. of Ohio*,
  89 Ohio St. 3d 431 (2000) ........................................................................................18

*Westwinds Dev. Corp. v. Outcalt*,
  2009 WL 1741978 (Ohio Ct. App. 2009) ..................................................................18

*Youn v. Track, Inc.*,
  324 F.3d 409 (6th Cir. 2003) ....................................................................................12

**Statutes**

R.C. § 2307.382(A) (1) ............................................................................................5, 6, 7

R.C. § 2307.382(A) (3) ........................................................................................5, 6, 7, 8

R.C. § 2307.382(A) (6) ........................................................................................5, 6, 8, 9

R.C. § 2307.382(C) ............................................................................................................6

R.C. §4113.62(D) ............................................................................................................14

**Other Authorities**

Rule 9(b) ....................................................................................................................16, 17

Rule 12(b)(6) .......................................................................................................4, 16, 18, 19

Rule 56 ............................................................................................................................20

## INTRODUCTION

CCL Label, Inc.'s ("CCL") claims against Third-Party Defendant Mark Schrader ("Schrader") are based upon actions he personally took as the Chief Financial Officer of Wesex Corp. ("Wesex") to perpetrate a massive fraud on CCL.  For nearly two years, Schrader falsely represented in sworn affidavits that payments he and Wesex were receiving from CCL were being used to pay subcontractors performing work on CCL's construction project in New Albany, Ohio. In fact, however, Schrader knew the subcontractors were not being paid when he was making sworn representations to the contrary.  Instead, Wesex, Schrader and his fellow officers paid themselves over a million dollars in excessive and unearned fees.  Schrader played a key role in perpetrating this fraud, such that he is personally liable for committing fraud.  CCL reasonably relied on Schrader's misrepresentations to its detriment and was fraudulently induced thereby to continue its relationship with, as well as making payments to, Wesex.  As a result of Schrader's fraudulent acts, CCL suffered, at a minimum, over one million dollars in damages.

Now Schrader seeks to evade answering for his misconduct, or, at the very least, further frustrate CCL's attempt to recover as plaintiff in the forum of its choice.  Schrader does so despite having directed his fraudulent activities at CCL in Ohio in order to defraud CCL on its Ohio construction project and having caused damage to CCL's business and real property in Ohio. Indeed, throughout the construction project and the fraudulent scheme, Schrader: (1) traveled to New Albany, Ohio more than once to meet with CCL personnel regarding the construction project; (2) directed countless emails and telephone calls to CCL in New Albany, Ohio; (3) transmitted his fraudulent affidavits to CCL personnel to induce payment; (4) furthered his fraud by making additional misrepresentations and omissions to CCL personnel in Ohio regarding payments to subcontractors; and (5) harmed CCL's operation and real property in Ohio, as well as harmed other Ohio companies working as subcontractors for Wesex (including the Plaintiff in this action,

Decker Construction).  These and other Ohio contacts by Schrader reveal that the exercise of personal jurisdiction comports over him with both Ohio law and due process.

## FACTS

CCL filed its third-party complaint against Schrader alleging that he, along with his fellow officers, perpetrated a massive fraud on CCL.  (Third-Party Compl. ¶¶ 32-33 (ECF No. 9)).  Schrader was the Chief Financial Officer and a Certified Public Accountant for Wesex, a design-builder CCL contracted to construct a new Production and Office Facility ("Project") on CCL's real property in New Albany, Ohio.  (*Id.* at ¶¶ 6, 11).  CCL and Wesex entered into a contract on December 15, 2015.  (*Id.* at Ex. A).  Schrader submitted Wesex's monthly payment application to CCL and repeatedly represented that Wesex was paying its subcontractors, sub-subcontractors, laborers and material suppliers.  (*Id.* at ¶ 25).  Schrader personally signed and executed affidavits attached to each pay application wherein he swore under oath that Wesex's subcontractors were being paid.  (*Id.* at ¶ 31).  Schrader, however, knew Wesex was not actually paying its subcontractors.  (*Id.* at ¶ 26).  Instead, Wesex, Schrader, Gregory Koledin and Melanie Panutsos converted the money received from CCL, stole from their subcontractors and paid themselves. (*Id.* at ¶ 26).

CCL would have terminated the relationship had it been aware of the non-payment, but Schrader's fraudulent misrepresentations kept CCL from knowing the truth and induced CCL to continue issuing payments to Wesex.  (*Id.* at ¶¶ 37-38).  As a result of the fraudulent scheme, CCL's property in Ohio has incurred damage, and many Ohio businesses—including RSI Metal Building Services, Nickolas Savko & Sons, Inc., Federal Elite Heating & Cooling, Mock Woodworking, Tarrier Steel Co., and Decker Construction Co.—were harmed.  (*Id.* at ¶ 39).

Furthermore, Schrader's contacts with Ohio and CCL while perpetrating this fraud scheme were pervasive.  For nearly two years, Schrader also dealt extensively with CCL personnel in Ohio.

2

(Affidavit of David Laverde ("Laverde Aff.") at ¶ 11, attached hereto as **Exhibit A**). On more than one occasion, Schrader personally traveled to the State of Ohio to attend meetings with CCL regarding the Project. (*Id*. at ¶¶ 9-10). These meetings were held at the Courtyard Marriott in New Albany, Ohio. (*Id.*). Schrader exchanged countless emails and telephone calls with CCL personnel in Ohio. (*Id*. at ¶ 21(a-g)). These communications included furthering his fraud by making misrepresentations about the status of payments to the subcontractors. (*Id*. at ¶¶ 12, 19, 20, 21(c-g)). Indeed, up and until Schrader left Wesex in the fall of 2017, he was in regular and routine contact with CCL and other Project personnel in Ohio. (*Id*. at ¶ 20). During that time, Schrader never disclosed the true status the payments to the subcontractors. (*Id*. at ¶ 19). To the contrary, as late as September 6, 2017, Schrader was still sending fraudulent affidavits to CCL personnel in Ohio stating that all the subcontractors had been paid—a demonstrably false claim. (*Id*. at ¶ 21(g)).

In addition, Schrader submitted all of the pay applications and his fraudulent affidavits ("Fraudulent Documents") to CCL personnel in Ohio in order to obtain payment approval. (*Id*. at ¶¶ 12-16). Indeed, from February 2, 2016 through September 6, 2017, Schrader sent over seventeen separate pay applications to CCL personnel in Ohio for payment. (*Id*. at ¶ 16). Each of those pay applications contained a false affidavit personally signed and sworn to by Schrader indicating that all Wesex's subcontractors were being paid. (*Id.*).

Specifically, Schrader would submit the Fraudulent Documents to CCL employees Doug Ulbrich and David Laverde in Ohio, who would then review the submissions and make the final decision on whether to approve and release payment to Wesex. (*Id*. at ¶¶ 13-15). If there were any problems with pay application submissions, Schrader would work directly with Laverde or other CCL personnel in Ohio to rectify those issues. (*Id*. at ¶ 13). Conversely, if the pay

applications appeared okay, then—from Ohio—Laverde would authorize Debbie O'Toole to release payment to Wesex.  (*Id*.).  While Schrader also submitted the same Fraudulent Documents to Debbie O'Toole, Schrader knew it was the CCL personnel in Ohio, Ulbrich and Laverde, who were relying on his misrepresentations to determine if payments would be made.  (*Id*. at ¶¶ 13-16).

As a result of Schrader's fraudulent activities directed at CCL in Ohio: (1) CCL's real property in Ohio was subjected to millions of dollars in mechanic's liens; (2) CCL is now engaged in multiple lawsuits with the subcontractors regarding work already paid for by CCL but with the funds stolen by Wesex and its corporate officers; and (3) a litany of other damages incurred as a consequence of the fraud.

## LAW AND ARGUMENT

Schrader's arguments for lack of personal jurisdiction over him and for dismissal under Rule 12(b)(6) are not supported by the law or fact and his Motion to Dismiss (ECF No. 35) should be denied in its entirety.

## I.    Legal Standard For Rule 12(b)(2) Motion.

Plaintiff bears the burden of establishing the existence of personal jurisdiction.  *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).  Where a Rule 12(b)(2) motion is decided solely on written submissions and affidavits, the plaintiff's burden is "relatively slight."  *Id.* (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)); *see also Coast to Coast Health Care Servs., Inc. v. Meyerhoffer*, No. 2:10-CV-734, 2012 WL 169963, *3 (S.D. Ohio Jan. 19, 2012).  Indeed, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal."  *Coast to Coast Health Care Servs.*, 2012 WL 169963 at *3; *see also*, *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996) (dismissal is appropriate "only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction"); *Theunissen v. Matthews,* 935 F.2d 1454, 1459

(6th Cir. 1991) (finding the district court erred by relying upon the defendant's affidavit in finding lack of personal jurisdiction and holding that the court must examine plaintiff's factual allegations notwithstanding defendant's contrary assertions in defendant's affidavit).

Furthermore, "[t]he pleadings and affidavits submitted must be viewed in a light most favorable to" the plaintiff, and the court "should not weigh 'the controverting assertions of the party seeking dismissal.'" *Estate of Thomson*, 545 F.3d at 360–61.  This rule is in place "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts[.]" *Theunissen*, 935 F.2d at 1459.

> **A.     This Court Has Specific Jurisdiction Over Schrader.**

Specific personal jurisdiction exists when the cause of action arises out of or relates to a defendant's contacts with the forum state, "even if those contacts are isolated and sporadic." *NCR Corp. v. PC Connection, Inc.*, 384 F. Supp. 2d 1152, 1158 (S.D. Ohio 2005) (quoting *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005)). Determining the existence of specific personal jurisdiction involves a two-step inquiry.  First, the court must determine whether the applicable Ohio long-arm statute supports jurisdiction.  *Id.* at 1156.  Second, the court must determine whether the exercise of that jurisdiction comports with constitutional due process.  *Id.*  Here, each of these inquiries is satisfied.

> **1.     Ohio's Long-Arm Statute Supports Exercising Jurisdiction Over Schrader.**

Ohio's long-arm statute provides at least three separate grounds for the exercise of personal jurisdiction over Schrader.  Specifically, Schrader: (1) transacted business in Ohio; (2) caused tortious injury by an act or omission in Ohio; and (3) caused tortious injury in Ohio by his acts outside the state which he could reasonably expect would have injured persons in Ohio.  *See* Ohio Rev. Code § 2307.382(A) (1), (3), (6).

Because Schrader's contacts with Ohio satisfy R.C. § 2307.382(A)(1), (3) and (6), and because the facts supporting jurisdiction give rise to the causes of action against Schrader, jurisdiction over Schrader is proper under Ohio's long-arm statute. *See* R.C. § 2307.382(C).

### a. Schrader Transacted Business in Ohio.

The Ohio Supreme Court interprets Section (A)(1) of the long-arm statue "very broadly [to] permit jurisdiction over non-resident defendants who are transacting any business in Ohio." *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75, 559 N.E.2d 477 (1990); *see also Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002) (noting that Ohio law controls the interpretation of Ohio's long-arm statute). Indeed, "the word 'transact' used in the long-arm statute is broader than the term 'contract' and embraces in its meaning 'to carry on business' and 'to have dealings.'" *Franklin Prods., Inc. v. Gen. Nutrition Corp.,* No. 2:05-cv-1061, 2007 WL 2462665, *4 (S.D. Ohio, Aug. 27, 2007); *Ky. Oaks Mall Co.*, 559 N.E.2d at 479.

In *Franklin Prods.*, this Court found the individual non-resident defendant had "transacted business in Ohio" where he had less contact with Ohio than Schrader:

> Mancini initiated, negotiated, and obligated GNC to extension agreements via telephone conversations with Franklin in Ohio. Moreover, as a result of Mancini's dealings with Franklin in Ohio, GNC had a continued contractual obligation to pay Franklin for its advertising. It is immaterial that Mancini never visited Ohio to discuss the extension agreements. Mancini's action[s] arise to the level of transacting business in Ohio.

*Franklin Prods.,* at *5. Here, unlike in *Franklin Prods.*, Schrader actually traveled to Ohio to meet with CCL on the same Project on which he was defrauding them.

As a result of Schrader's fraud and dealings with CCL in Ohio, CCL continued its contractual obligations and dealings with, as well as made payments to, Wesex. (Laverde Aff., ¶ 15). Indeed*,* for nearly two years, Schrader: regularly contacted CCL employees in Ohio to discuss and negotiate payments to Wesex (*Id.* at ¶¶ 12-16, 19, 21(a-g)); traveled to Ohio and

attended meetings relating to the Project and CCL (*Id.* at ¶¶ 9-10); fraudulently caused CCL to authorize in Ohio the transition of payments to Wesex (*Id.* at ¶¶ 15-17); and fraudulently induced CCL in Ohio to continue its relationship with Wesex on the Project. (*Id.* at ¶15).

All of these facts support a finding that Schrader "transacted business" in satisfaction of R.C. § 2307.382(A)(1). *See Leisure Sys., Inc. v. R&G, Inc.*, No. A-1008873, 2011 Ohio Misc. LEXIS 150 at *4 (Cty. C.P. 2011) (finding non-resident officer met the "transacting business" test where he "has come to Ohio for meetings regarding his company's franchise with Plaintiff[,] [h]e has corresponded regularly with Plaintiff in Ohio[, a]nd he came to Ohio for the launch of the Yogi program in 2008"); *NPF XII, Inc. v. Special Care, Inc.*, 2001 WL 36951418 at *3 (S.D. Ohio July 17, 2001) (finding defendant "transacted business" where she "conducted telephone calls and other correspondence with the plaintiff, which she knew to be an Ohio company" and "previously visited the state on two occasions in regard to business dealings with NPF predecessors"); *Nat'l City Commercial Capital, Co., LLC v. Evertile Flooring, Inc.,* 2010 WL 422431 (Hamilton Cty. C.P. 2010) (finding transaction of business where "Defendants had numerous contacts with Plaintiffs through e-mails and telephone calls, all to Ohio").

### b.    *Schrader Committed Tortious Acts in Ohio.*

Schrader is also subject to jurisdiction under R.C. § 2307.382(A)(3), because he caused "tortious injury by an act or omission in this state."  In *FRC Int'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*, 2002 WL 31086104 (N.D. Ohio 2002), personal jurisdiction over an individual defendant, "acting on behalf of" the corporation, was found proper based on allegations that he made fraudulent misrepresentations "through mail and facsimile communications transmitted to plaintiff in [] Ohio." *Id.* at *4.  Although the individual defendant in *FRC Int'l, Inc.* was an out-of-state agent of the corporate co-defendant and had never traveled

to Ohio, the court found "that these allegations meet Ohio's long-arm statute allowing jurisdiction over [individual defendant] as a defendant who caused tortious injury by acts in Ohio." *Id*.

Here, Schrader's conduct is no different from that found to satisfy R.C. § 2307.382(A)(3) in *FRC Int'l, Inc.*  For nearly two years, CCL alleges that the Schrader committed fraud by transmitting and submitting multiple fraudulent affidavits to CCL to induce payment to Wesex. (Third-Party Compl. ¶¶ 31, 35).  This is further supported by the affidavit of David Laverde of CCL, who explained that Schrader transmitted the fraudulent affidavits with Wesex's pay applications to CCL in Ohio and furthered the fraud through multiple telephone calls and emails to CCL in Ohio.  (Laverde Aff., ¶¶ 13-20).  Just as the Southern District of Ohio found in *FRC Int'l, Inc.*, the facts of this case support a prima facie showing of jurisdiction under R.C. § 2307.382(A)(3).

### c.      *Schrader Committed Tortious Acts that Caused Harm in Ohio.*

Even if the Court determines that Schrader committed the alleged fraudulent acts outside of Ohio, he is still subject to jurisdiction under R.C. §2307.382(A)(6).  This section permits a court to exercise personal jurisdiction over a non-resident defendant if the cause of action arises from a tortious act committed outside Ohio with the purpose of causing injury in Ohio, when the non-resident defendant might reasonably have expected the injury to have occurred in Ohio.  *Clark v. Connor,* 82 Ohio St. 3d 309, 313 (1998).  The issue to resolve when analyzing whether Section (A)(6) confers personal jurisdiction is whether a defendant "might reasonably have expected [the plaintiff] to be injured in Ohio by their tortious acts."  *See Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 167 (S.D. Ohio 2012).

Here, with the intent of injuring and inducing CCL, as well as numerous other Ohio companies (including the plaintiff in this action, Decker), Schrader is alleged to have committed numerous acts of fraud by submitting multiple fraudulent affidavits to CCL in Ohio to induce CCL

to approve and to continue making payments to Wesex. Schrader then furthered that fraud through representations he made through his routine telephone calls and emails to CCL in Ohio. The payments Schrader defrauded CCL into making related solely to a construction project involving real property in Ohio owned by CCL. Consequently, CCL's real property in Ohio was damaged by the filing of mechanic's liens and having to defend lawsuits in Ohio filed by Wesex's Ohio subcontractors. Furthermore, CCL's lost profits and delayed start-up of its Ohio facility, stemming from Defendant Schrader's fraud, are damages CCL incurred in Ohio.

When Schrader's fraud was successful, he should not be surprised that Ohio's long-arm statute subjects him to jurisdiction here. *See, e.g., Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 164 (S.D. Ohio 2012) (collecting cases and noting that "[i]n all [cases cited by this Court], section (A)(6) conferred personal jurisdiction when the claim in question was related to property located in Ohio or the tortious injury was suffered in Ohio."); *Kehoe Component Sales, Inc. v. Best Lighting Prod., Inc.*, No. 2:08-CV-752, 2009 WL 2591757, *5 (S.D. Ohio Aug. 19, 2009) (fraudulent communications "intentionally and purposefully directed ... toward a Plaintiff in Ohio" establish personal jurisdiction); *Ashton Park Apts., Ltds. v. Avram Lebor,* 252 F. Supp. 2d 539, 546-48 (N.D. Ohio 2003) (allegations that defendants "directed fraudulent communications to Plaintiff in Ohio" sufficient to satisfy section (A)(6)); *Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F. Supp. 825, 829 (N.D. Ohio 1996) ("[T]he non-resident defendant's acts of negligent misrepresentation and intentional fraud caused injury in Ohio by "omission," thus bringing the instant action under the sixth category of Ohio's long-arm statute."); *Herbruck v. LaJolla Capital,* No. 19586, 2000 WL 1420282, *3 (Ohio Ct. App. Sept. 27, 2000) ("Section (A)(6) confers personal jurisdiction where a non-resident allegedly committed conversion, fraud and civil conspiracy outside of Ohio knowing" harm would likely result in Ohio.).

2.     **The Exercise Of Jurisdiction Over Schrader Comports With Due Process.**

Due process requires only that a defendant "have certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).  The Sixth Circuit has established a three-part test for determining whether these minimum contacts exist: (1) "the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; (2) "the cause of action must arise from the defendant's activities there"; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* at 549–50; *Sylvester Material, Inc. v. John Carlo, Inc.*, No. 3:04CV7686, 2005 WL 1176054, *2 (N.D. Ohio May 17, 2005).  Importantly, "[p]hysical presence is not the touchstone of personal jurisdiction." *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001).

In other words, if Defendant Schrader could reasonably anticipate being hauled into court in Ohio by its actions, then due process is satisfied.  *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75 (1985) (quotation omitted).  CCL satisfies this test.

### a.     *Schrader Purposefully Availed Himself in Ohio.*

Purposeful availment is "satisfied when a defendant avails himself of the privilege of acting in the forum state *or* causing a consequence in the forum state." *Mulch Mfg., Inc. v. Advanced Polymer Sols., LLC*, No. 2:11-CV-0325, 2012 WL 628521, *4 (S.D. Ohio Feb. 27, 2012) (quoting *Health Care Indus., Inc. v. Logan Park Care Ctr., Inc.*, 573 F.Supp. 360, 362 (S.D. Ohio 1983)).  "'[P]urposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in [Ohio] or conduct which can be properly regarded as a prime generating

cause of the effects resulting in [Ohio]." *Id.* (quoting *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003) (internal quotations and citation omitted)). Such conduct can be as attenuated as causing "effects on the 'general conduct of business in Ohio' which 'may not be readily quantifiable,' but are 'nonetheless real.'" *Id.* (quoting *Health Care Indus.*, 573 F. Supp. at 363).

Here, Schrader purposely availed himself by, among other things, traveling to Ohio to meet with CCL regarding the Project that created continuing obligations between his company and the Bank's representatives in Ohio.  He engaged in regular communications (both in person in Ohio and by calling into Ohio) with CCL personnel, and he caused fraudulent pay applications and affidavits to be submitted to CCL for approval in Ohio.  (Laverde Aff., ¶¶ 12-21(a-g)).  The Sixth Circuit has held that, "[w]hen an out-of-state defendant intentionally engages in efforts to pursue business in the forum state, especially through actual travels to that state, jurisdiction over that defendant is appropriate under the due process clause." *Mulch Mfg., Inc.*, 2012 WL 628521 at *9-10 (citing *Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1217 (6th Cir. 1989); *see also Kehoe Component Sales, Inc.*, 2009 WL 2591757 at *6 ("[W]hen Mr. Kehoe transacted business by negotiating and executing a contract via telephone calls and e-mails to an Ohio resident, he has purposefully availed himself of the forum by creating a continuing obligation in Ohio.")).

In addition, Schrader caused consequences to CCL in Ohio when he submitted fraudulent pay applications and affidavits to CCL in Ohio to induce CCL to approve payments to Wesex, which resulted in: (1) damage to CCL's real property in Ohio; (2) CCL being subjected to numerous lawsuits by Ohio subcontractors from whom Wesex stole; and (3) lost profits and other consequential damages on the delays to the Project caused by Schrader's fraudulent activities. When a defendant directs tortious activity toward Ohio, he "purposefully avails" himself of the

privilege of acting in Ohio or causing a consequence in Ohio. *Neal,* 270 F.3d at 332-33 (finding that plaintiffs' allegations that defendant had intentionally defrauded them in phone calls and faxes directed to plaintiffs in the forum state were sufficient to constitute purposeful availment); *FRC Int'l, Inc.*, 2002 WL 31086104 at *6 (where defendant's communications into Ohio formed the basis of fraud claim, he "purposefully availed himself of Ohio because [his] conduct created a 'substantial connection' with Ohio ... [and he] should, accordingly, reasonably have anticipated being haled into court in Ohio"); *Ashton Park Apartments, Ltd.*, 252 F. Supp. 2d at 545-47 (finding due process satisfied of individual non-resident shareholder alleged to have used interstate communications facilities, such as mail, e-mail, fax, and telephone, to make fraudulent representations directed to prospective borrower in Ohio).

### b. CCL's Claims Arise From Schrader's Ohio Activities.

The "arising from" element of the due process analysis "is satisfied if the cause of action is 'related to' or 'connected with' the defendant's forum contacts." *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 n.2 (6th Cir. 1989)). This prong is met even if the operative facts of the controversy are only "marginally related" to the contacts between Schrader and Ohio. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). The Sixth Circuit has stated that a "lenient standard . . . applies when evaluating the 'arising from' criterion." *Id.*; *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 115 (6th Cir. 2005) ("Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact") (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 384 (6th Cir. 1968)).

Here, the causes set forth in the complaint are directly "related to" or "connected with" Schrader's Ohio contacts. Indeed, all of the Schrader's Ohio contacts that CCL identified directly relate to the Ohio construction Project on which Schrader defrauded CCL. Furthermore, the basis

of CCL's fraud claim against Schrader is specific contacts, documents and communications that he directed to CCL in Ohio (i.e. the fraudulent affidavits submitted to CCL in Ohio and routine communications with CCL personnel in Ohio soliciting payment for the fraudulent pay applications). Schrader's contacts not only facilitated the accruement of this action against him, but were, in fact, the source. *Neal,* 270 F.3d at 332-33 (finding the "arising out of" prong was satisfied in a fraud action that alleged misrepresentations were to plaintiff in the forum state); *Leighton v. Poltorak*, No. 1:16-CV-2898-DAP, 2017 WL 1399839, *6 (N.D. Ohio Apr. 19, 2017) (finding that fraud claims against "the individual Defendants arose from their negotiation of those agreements and their obligations under those agreements.").

### c.    The Exercise of Jurisdiction Over Schrader is Reasonable.

The Sixth Circuit has instructed that "when the first two factors are met, a presumption arises that the exercise of jurisdiction would be 'reasonable' under the third factor." *Scotts Co.*, 145 F. App'x at 115. Indeed, "only the unusual case will not meet this third criterion" when the first two factors are met. *Theunissen,* 935 F.2d at 1461 (citing *Am. Greetings Corp.*, 839 F.2d at 1170); *Leighton,* 2017 WL 1399839 at *6 (finding that "there is an inference that [defendants] have a substantial connection with Ohio" when the first two prongs of the due process analysis are satisfied)).

Regardless, where an out-of-state defendant reaches into Ohio to cause harm in Ohio, this Court's exercise of personal jurisdiction over it is reasonable. *See, e.g.*, *Alexander Assocs., Inc. v. FCMP, Inc.*, No. 10-12355, 2012 WL 1033464, *21 (E.D. Mich. Mar. 27, 2012). Schrader, over the course of the long-term business relationship with CCL traveled to Ohio several times to meet with representatives of CCL and maintained routine and direct communications with CCL personnel in Ohio. These facts, in addition to Schrader's direction of tortious and fraudulent activity toward CCL in Ohio, warrant the exercise of jurisdiction over him.

Furthermore, Schrader's fraud involves a construction project on property in Ohio owned by CCL. Under R.C. §4113.62(D), Ohio codified its strong interest in resolving construction disputes related to real property located in Ohio by requiring all such disputes be litigated in Ohio.

Accordingly, it is reasonable to subject Schrader to this Court's jurisdiction.

### 3. The Fiduciary Shield Doctrine is Not Applicable to Schrader.

Ignoring clear precedent to the contrary, Schrader argues the exercise of jurisdiction over him is not proper pursuant to the "fiduciary shield doctrine"; arguing that his contacts with Ohio were performed in his representative capacity for the benefit of Wesex and, therefore, do not support the exercise of personal jurisdiction over him. (Motion to Dismiss ("Mtn."), pp. 8-9). Pursuant to overwhelming Ohio and Sixth Circuit law, however, "when a plaintiff alleges an individual defendant 'was personally involved with the alleged torts, including fraud, in the course of his employment,' that defendant is not protected by the fiduciary shield doctrine and is subject to personal jurisdiction in the forum state." *Leighton*, 2017 WL 1399839 at *6 (quoting *Champion Food Serv., LLC, v. Vista Food Exch.*, No. 1:13-cv-01195, 2013 WL 4046410, *4 (N.D. Ohio Aug. 7, 2013)); *see also Flynn v. Greg Anthony Constr., Co., Inc.,* 95 F. App'x 726, 740 (6th Cir. 2003) (holding personal jurisdiction can be exercised where a non-resident corporate officer "is actively and personally involved in the conduct giving rise to the claim."); *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (holding that "the mere fact that the actions . . . were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction . . . ."); *Nationwide Life Ins. Co. v. Koresko,* No. 2:05-cv-1066, 2007 WL 2713783, *2 (S.D. Ohio Sept. 14, 2007) ("[W]hile Ohio recognizes the fiduciary shield doctrine, it is not recognized where a [corporate] representative . . . is personally involved in the actions which make the assertion of jurisdiction appropriate."); *Kehoe Component Sales, Inc.*, 2009 WL 2591757 at *8 (holding the fiduciary shield doctrine did not apply because personal jurisdiction

was "not based simply upon jurisdiction over [the corporation, but was] based on all of [the corporate officer's] actions that allegedly … caused injury in Ohio" and the fact "that he committed the actions in his capacity as an officer ... does not prevent the exercise of jurisdiction over him"); *NPF XII, Inc.*, 2001 WL 36951418 at *5 (noting an exception where the corporate agent is alleged to have committed a tort, including fraud, in his or her "corporate capacity").[1]

Here, CCL has specifically alleged that Schrader was personally involved in fraud. Indeed, CCL alleged that in his capacity "as Wesex's Chief Financial Officer, Defendant Schrader, a Certified Public Accountant, knowingly signed and executed the fraudulent affidavits attached to the Applications for Payment up to, and including, Application for Payment No. 17." (Third-Party Compl. ¶ 31). CCL further alleged that Schrader "at all times … knew that the affidavits being submitted to CCL with the Applications for Payment were false." (*Id.* at ¶ 34). Whether Schrader was instructed to submit affidavits he knew were false or he did so in his capacity as an officer of Wesex does not absolve him of personally signing documents under oath that he knew were false and personally submitting those false documents to CCL in Ohio to induce CCL to take actions under false pretenses.

Because both Sixth Circuit and Ohio case law support an exception to the fiduciary shield doctrine where the defendant is alleged to have actively participated in a fraud, the doctrine is inapplicable in this case to shield Schrader from personal jurisdiction in Ohio.

---

[1] State courts in Ohio reach the same result. *See, e.g., In the Matter of: Blue Flame Energy Corp. v. Ohio Dept. of Commerce,* 171 Ohio App. 3d 514, 532 (Ohio Ct. App. 2006) ("[T]he fact that the actions connecting the officers to the state were undertaken in an official, rather than personal, capacity does not preclude the exercise of personal jurisdiction over those defendants"); *Berbruck v. Capital,* No. 19586, 2000 Ohio App. LEXIS 4668, *9 (Ohio Ct. App. 2000) (finding jurisdiction over company owner despite his argument that his involvement in the underlying facts "was solely in [his] capacity as an officer and employee of" the corporate defendant); *Heritage Funding & Leasing Co.,* 120 Ohio App. 3d 422 (Ohio Ct. App. 1997) (finding the "corporate shield doctrine" did not apply to the individual defendant who was a corporate officer because plaintiff alleged the officer was personally involved in the fraudulent conduct).

## II.     **CCL's Claims Against Schrader Satisfy Rule 12 Pleading Standards**.

Schrader fails to show that CCL has not met its burden to overcome a Rule 12(b)(6) motion. Schrader argues that CCL failed to plead its fraud claim with particularity and that CCL waived its right to pursue the claim.  In the course of these arguments, Schrader exceeds the scope of a 12(b)(6) motion by relying on facts not contained in the Complaint against him.

### 1.     **CCL's Complaint Pleads Fraud With Sufficient Particularity.**

Schrader cannot claim that CCL has not pleaded fraud with sufficient particularity because CCL identified specific written documents Schrader executed himself as the basis for its fraud claim.  CCL's fraud claim leaves no ambiguity as to the time, place, and content of the fraudulent misrepresentation.

The purpose of Rule 9(b) is to provide fair notice of a fraud claim to a defendant, "but it should not be read to defeat the general policy of "simplicity and flexibility" in pleadings . . . ." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503-04 (6th Cir. 2008).  If a defendant is given the "minimum degree of detail necessary" to respond to the allegations, a plaintiff has generally met Rule 9(b) requirements.  *Id.* at 504.

Schrader cannot in good faith claim that he was not given fair notice of the specific acts of fraud CCL alleges.  CCL pled, in detail, the following facts regarding his fraud claim:

- CCL and Wesex entered into a contract dated December 15, 2015.  (Third-Party Compl. at Ex. A);

- Pursuant to that Contract, applications for payment were due on or around the first of each month.  (*Id.* at ¶ 11);

- To induce CCL to continue its business relationship with Wesex and continue remitting payments to Wesex, Schrader included affidavits falsely representing that Wesex was paying its subcontractors when in fact it was not paying them at all.  (*Id.* at ¶¶ 25-26);

- "[A]cting as Wesex's Chief Financial Officer, Defendant Schrader, a Certified Public Accountant, knowingly signed and executed the fraudulent affidavits attached to the Applications for Payment up to, and including, Application for Payment No. 17."  (*Id.* at ¶ 31);

16

- Schrader "at all times, knew that the affidavits being submitted to CCL with the Applications for Payment were false." (*Id.* at ¶ 34);

- "The falsely executed affidavits, along with the diversion of funds intended for Wesex's subcontractors…were both material to the transaction and knowingly false with the intent of misleading and inducing CCL into making payments to Wesex and continuing the business relationship." (*Id.* at ¶ 35);

- CCL justifiably relied on the falsely executed affidavits because each were executed, sworn and notarized by Wesex and Defendant Schrader and this reliance caused damages to CCL. (*Id.* at ¶ 36);

- But for Schrader's fraud "CCL would have terminated Wesex, and therefore, denied Wesex the financial gains that it fraudulently and purposefully obtained." (*Id.* at ¶ 37);

- Additionally, due to Schrader's fraud "CCL was induced to continue its obligations under the Agreement when it would not otherwise have done so." (*Id.* at ¶ 38);

- Schrader profited from the fraudulent activities by obtaining Wesex nearly one-million dollars in excessive fees from CCL, which he subsequently was paid with. (*Id.* at ¶¶ 40, 56); and

- In addition to the excessive fees, Schrader's fraud caused CCL damages by exposing CCL to liability to the subcontractors and subjecting CCL's real property to liens. (*Id.* at ¶ 39).

CCL's allegations put Schrader on notice that CCL is alleging that: he personally signed sworn affidavits he knew falsely stated that the subcontractors were being paid; on monthly intervals from Wesex's engagement, he personally submitted affidavits he knew were false to CCL; CCL relied on his fraudulent affidavits when approving payment; and, as a result, CCL paid Wesex in excess of one million dollars in unearned fees. CCL's thorough pleading satisfies Rule 9(b) and gives Schrader more than enough notice to respond to the allegations.

Schrader's argument that the existence of a breach of contract claim against Wesex prevents recovery is without merit. CCL has alleged more than a bad faith breach of contract. (*See generally* Third-Party Compl.). Schrader and his fellow corporate officers developed a scheme to fraudulently induce CCL into making payments it would have otherwise not made and continue its relationship with Wesex when it would have otherwise terminated it. This Court has found such allegations akin to fraudulent inducement and not barred by the existence of a contract.

*See MedChoice Fin., LLC v. ADS All. Data Sys., Inc.*, 857 F. Supp. 2d 665, 672 (S.D. Ohio 2012) ("Defendants did not just breach the contract by submitting charges for unauthorized services. Instead, they orchestrated a scheme to submit such charges, to mislead the Bank into thinking such charges were authorized, and to induce the Bank to extend credit . . . that the Bank would not otherwise have extended."); *Id.* at 672 (noting "the fraud claim seeks damages that the Bank incurred by continuing its obligations under the Contract when, but for the fraud, it would have terminated the Contract" and finding that not all damages incurred by the fraud will be recoverable under the contract claim); *Cincinnati Gas & Electric Co. v. Gen. Elec. Co.,* 656 F. Supp. 49, 71-72 (S.D. Ohio 1986) (where defendant continued to market defective technology and "induced [plaintiffs] to pay for additional experimental work" under a contract, "much more is asserted in plaintiffs' fraud claim than a bald allegation of malicious or bad faith breach of contract").

### 2. Schrader's Waiver Argument is Unsupported by Law and Outside the Scope of a Rule 12(b)(6) Motion.

Schrader's waiver argument is premature and not appropriate for a Rule 12(b)(6) motion. Not only does Schrader introduce facts outside the Complaint to support his waiver argument, but he also does not cite to any legal authority and attempts to forward a fact-based argument in Rule 12 briefing. Thus, Schrader's waiver argument is outside the scope of a Rule 12(b)(6) motion, and the Court should ignore it.

Assertions of waiver are inherently factual and are predicated on a "question of actual knowledge … because waiver requires 'a voluntary relinquishment of a known right.'" *See Am.'s Collectibles Network, Inc. v. Sterling Commerce (Am.), Inc.*, No. 3:09-CV-143, 2016 WL 9132294, *18 (E.D. Tenn. Sept. 7, 2016); *see also State ex rel. Wallace v. State Bd. of Ohio*, 89 Ohio St. 3d 431, 435 (2000); *Westwinds Dev. Corp. v. Outcalt*, 2009 WL 1741978, at *6 (Ohio Ct. App. 2009) (noting that a party must be apprised of the fraud and have knowledge that the

18

representations are false or fraudulent in order to waive a fraud claim). The party asserting wavier has the burden to prove the conduct of the other party constitute waiver. *Gill v. Rana*, 2017 WL 677056, at *4 (Ohio Ct. App. 2017) (quoting *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190 (1936)). Whether or not CCL knew of Schrader's fraud such that it could have knowingly waived its claim is a question of fact; an improper inquiry for a Rule 12(b)(6) Motion.

Furthermore, it is well-established that when ruling on a motion to dismiss, a court is confined to the four corners of the complaint and documents attached thereto. *Beaver Cty. Ret. Bd. v. LCA-Vision, Inc.*, 2009 WL 806714, at *4 (S.D. Ohio 2009) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86 (6th Cir. 1997)). The only extrinsic documents the court may consider are materials that are "integral to the complaint, are public records, or otherwise appropriate." *Id.* (citing *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005)).

Here, Schrader improperly attempts to weave the facts in his affidavit to support his defense. Schrader introduces extrinsic facts, such as CCL allegedly failed to raise objections, CCL's course of conduct allegedly modified the agreement, and that CCL allegedly withheld funds from Wesex. (Mtn., p. 13). Schrader's support for these claims comes either from his own affidavit—an improper document for the Court consider at the 12(b)(6) stage—or are introduced for the first time in the Motion. Schrader's 12(b)(6) motion is based almost entirely on these improper facts. (*See id*.). CCL has had no opportunity for factual inquiry, making them inappropriate for ruling at the 12(b)(6) stage.

### 3. In the Alternative, the Court Should Convert Schrader's Motion to a Summary-Judgment Motion and Postpone Ruling for Factual Inquiry.

In addition to Schrader's Motion failing on its own merit for the aforementioned reasons, Schrader improperly raises and relies on facts outside the pleadings in support of his Rule 12(b)(6) argument. Contrary to CCL's allegations, Schrader argues he did not know he was signing a false

document because he relied on information from his fellow corporate officers.  (Mtn., p. 12).  He also argues that CCL withheld "hundreds of thousands of dollars from Wesex."  (*Id.* at p. 13).  None of these assertions are derived from the pleadings.  Should the Court consider the external facts Schrader raises, the Court must convert the motion into a Rule 56 motion for summary judgment and postpone ruling until a reasonable opportunity for factual inquiry can be made.

If a court considers material extrinsic to the pleadings, the court is required to convert the motion to dismiss to a motion for summary judgment.  *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009).  When this occurs, the court must give the parties a reasonable opportunity to produce evidence on the issues to be decided.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001).

Accordingly, the Court should deny the motion to dismiss based on the materials within the pleadings.  Should the Court allow Schrader to introduce extrinsic evidence, however, CCL moves the Court for the opportunity to do the same.

## CONCLUSION

For the foregoing reasons, CCL respectfully requests that this Court deny Schrader's Motion to Dismiss in its entirety.

Dated: October 19, 2018                     Respectfully submitted,

                                            */s/ Jonathon Korinko*
                                            Jonathon Korinko, Esq. (0088407)
                                            Benesch, Friedlander, Coplan & Aronoff
                                            LLP
                                            200 Public Square, Suite 2300
                                            Cleveland, OH  44114-2378
                                            (216) 363-4500 Telephone
                                            (216) 363-4588 Telefax
                                            E-mail:  jkorinko@beneschlaw.com

                                            *Counsel for Defendant and Third-Party*
                                            *Plaintiff CCL Label, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 19, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a notification of such electronic filing to all counsel of record in this case who are registered CM/ECF users and I have served any non-ECF users by first class mail with postage prepaid.

 */s/ Jonathon Korinko*         
*Counsel for Defendant and Third-Party Plaintiff CCL Label, Inc.*

21