# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DECKER CONSTRUCTION CO., | : | CASE NO. 2:18-cv-00727 |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| vs. | : | |
| WESEX CORPORATION, *et al.*, | : | MAGISTRATE JUDGE ELIZABETH P. DEAVERS |
| Defendants, | : | |
| vs. | : | |
| GREGORY KOLEDIN, *et al.*, | : | |
| Third Party Defendants. | : | |

### AFFIDAVIT OF DAVID LAVERDE

**STATE OF NEW JERSEY** )
                                     ) **ss:**
**COUNTY OF MERCER** )

I, David Laverde, being duly sworn, state as follows:

1. I have been employed at CCL Label Inc. ("CCL") for 11 years, and I currently hold the title of Manager of Design and Construction Worldwide.

2. I have personal knowledge of the facts set forth in this affidavit.

3. I have reviewed Mark Schrader's affidavit submitted in support of his motion to dismiss and find his statements regarding his involvement with this Project and his contacts in the State of Ohio relating to this Project as inaccurate and false.

4. I have held my current title at all times relevant to this affidavit.

1

5. As the Manager of Design and Construction Worldwide for CCL, my duties include my duties include designing facilities and overseeing the work performed in all types of construction projects throughout the world as well as maintaining the Project schedule.

6. On or around December 15, 2015, CCL entered into the Design-Builder Agreement with Wesex Corp. ("Wesex") for the new construction of CCL's New Production and Office Facility ("Project") on real property owned by CCL and located New Albany, Ohio 44333.

7. CCL was already operating in Ohio at the time of the Project with offices in Strongsville, Ohio and Hamilton, Ohio. The Project was to be CCL's third office location in Ohio.

8. I was involved with the Project from the very beginning. Once construction commenced, I was responsible for overseeing the work performed as well as maintaining the Project schedule. I was also responsible for approving all pay applications submitted by Wesex.

9. I first met Mark Schrader when he traveled to the State of Ohio to attend a kick-off meeting on the Project. The meeting was held at the Courtyard Marriott in New Albany, Ohio.

10. After the kick-off meeting, I am aware of at least one additional Project meeting that Mark Schrader attended at the Courtyard Marriott in New Albany, Ohio.

11. In addition to the in-person meetings with Mark Schrader that took place in Ohio, I dealt extensively with Mark Schrader throughout the Project.

12. For instance, Mark Schrader regularly called me in Ohio to discuss pay applications and the status of certain pay applications.

13. Indeed, Mark Schrader submitted Wesex's pay applications to Doug Ulbrich and myself in Ohio for approval. If there were any problems with pay application submissions, then I would inform Mark Schrader and he would attempt to rectify those issues. Conversely, if the pay

applications were supported and appeared accurate, then I would authorize Debbie O'Toole to release payment to Wesex.

14. Thus, while Mark Schrader did submit the pay applications to Debbie O'Toole, he also submitted those same pay applications to Doug Ulbrich and myself in Ohio. And it was at the Project site in Ohio where Wesex's pay applications and the false affidavits submitted by Mark Schrader were reviewed and approved for payment.

15. CCL relied on Mark Schrader's false affidavits in approving payment to Wesex and deciding to continue to have Wesex work on the Project. Again, Mark Schrader submitted those false affidavits to CCL personnel, including myself, at the Project site in Ohio to obtain payment approval.

16. From February 2, 2016 through September 6, 2017, Mark Schrader sent over 17 separately numbered pay applications to CCL, including Doug Ulbrich and myself, in Ohio to be approved for payment. Each of those pay applications contained a false affidavit personally signed and sworn to by Mark Schrader indicating that all Wesex's subcontractors were being paid.

17. I later discovered that Mark Schrader's affidavits were actually false, and Wesex had in fact not been paying its subcontractors with the money CCL had been paying Wesex through its pay applications. Indeed, over a dozen subcontractors began coming to CCL claiming Wesex had not paid them for work they performed on the Project. Pursuant to the pay applications submitted to and paid by CCL, CCL had paid Wesex for the work for which these subcontractors were claiming to have not been paid.

18. The subcontractors' claims ran contrary to the dozens of affidavits that Mark Schrader submitted stating that all of Wesex's subcontractors were paid in full as of the date of each pay application.

19. After these subcontractors began asserting claims and filing liens in Ohio, Mark Schrader was in continuous contact via both telephone and email with Doug Ulbrich and myself in Ohio. During those communications, Mark Schrader furthered his fraud by continuing to misrepresent the status of the payments to subcontractors and failing to disclose that, despite having personally submitted numerous affidavits to the contrary, Wesex was not paying its subcontractors with money it received from CCL.

20. In addition to submitting pay applications and false affidavits to CCL in Ohio for approval as well as regularly calling me in Ohio to discuss Wesex's pay applications, through the duration of Wesex's involvement with the Project and until Mark Schrader left Wesex in the fall of 2017, Mark Schrader was in regular and routine contact with CCL and other Project personnel in Ohio.

21. While the disclosure of every contact Mark Schrader had in Ohio on this Project is too voluminous to disclose in this affidavit, some examples of those communications include:

    a. On February 3, 2017, Mark Schrader sent an email to Doug Ulbrich and myself in Ohio indicating that Wesex was delayed in submitting its February 2017 pay application. In the email, Mark Schrader explained the delay was because his "guys just got back from the job site [in Ohio] this morning [and he] had to have updates from them."

    b. On May 8, 2017, Mark Schrader sent an email to myself, as well as to my colleagues David Mears and Guy Kiraly, discussing critical path delays Wesex caused to the Project in Ohio.

    c. On July 24, 2017, Mark Schrader sent an email to me in Ohio, which falsely indicated that the Wesex was resolving issues with its unpaid subcontractors.

4

   d. On August 1, 2017, Mark Schrader sent an email to Doug Ulbrich and myself in Ohio.  In the email, Mark Schrader sent an email regarding the Wesex June 2017 pay applications and threatening to pull Wesex's crew off the Project if CCL did not remit payment within forty-eight hours.  Again, Mark Schrader failed to acknowledge and/or disclose that Wesex had not been paying its subcontractors.

   e. On August 7, 2017, Mark Schrader sent the pay application no. 16 to Doug Ulbrich and myself in Ohio.  Pay application no. 16 included a false affidavit signed by Mark Schrader that stated all the subcontractors have been paid in full as of August 4, 2017.  In this email, Mark Schrader acknowledges that I requested additional documentation to support the pay applications and he was working on providing that information to me.

   f. On August 10, 2017, Mark Schrader sent an email to Doug Ulbrich, Guy Kiraly and myself in Ohio stating that one of Wesex's subcontractor's, Uni Pro Painting, Inc., was paid in full.  I now know that Mark Schrader's representation to be false.  A short time after Mark Schrader's email, Uni Pro Painting, Inc. filed a mechanic's lien against CCL's Ohio property and filed suit against CCL to foreclose on the Ohio property because Wesex in fact had not paid Uni Pro Painting, Inc. in full.

   g. On September 6, 2017, Mark Schrader sent the revised pay application no. 17 to Doug Ulbrich and myself in Ohio.  The revised pay application no. 17 included a false affidavit signed by Mark Schrader that stated all the subcontractors have been paid in full as of September 6, 2017.

**[SIGNATURE PAGE FOLLOWS]**

FURTHER AFFIANT SAYETH NAUGHT

This the 17th day of October, 2018.

David Laverde

Sworn to and subscribed before me this the

17th day of October, 2018.

Notary Public

My commission expires: ____

> JENNIFER CRUZ
> Notary Public - State of New Jersey
> My Commission Expires Jun 26, 2023

6