# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DECKER CONSTRUCTION CO.,       :
                                     :        Case No. 2:18-cv-727

          Plaintiff,        :

                                     :        **JUDGE ALGENON L. MARBLEY**

     v.                     :

                                     :        Magistrate Judge Deavers

**WESEX CORPORATION,** *et al.*     :

                                     :

          Defendants.      :

## <u>OPINION & ORDER</u>

This matter comes before the Court on Third-Party Defendant Mark Schrader's Motion to Dismiss. (ECF No. 35). CCL Label, Inc. ("CCL"), a Defendant in this case, filed a Third-Party Complaint against Mark Schrader, formerly the Chief Financial Officer ("CFO") of Wesex Corporation ("Wesex"), for fraudulent misrepresentation. Wesex is also named as a defendant in this case. CCL, the manager of a construction project in New Albany, Ohio, alleges that Schrader executed false affidavits to conceal the fact that Wesex, the project's general contractor, was not using their payments from CCL to compensate the project's subcontractors for their materials and labor. Schrader has filed a Motion to Dismiss, arguing that he is not subject to Personal Jurisdiction in Ohio, and that CCL has failed to state a claim. For the reasons below, this Court **DENIES** Third-Party Defendant Schrader's Motion to Dismiss.

## I.      BACKGROUND

### A.  Factual Background

CCL hired Wesex Corporation ("Wesex") to build an office building in New Albany, Ohio and the two parties entered into a Design-Builder agreement on December 15, 2015. (ECF No. 36-1 at ¶ 6). Mark Schrader ("Schrader") was CFO of Wesex from January 2016 to October

13, 2017 and was heavily involved with the project, which ran from early March 2016 until early 2017. (ECF No. 9 at 15 ¶ 13; ECF No. 35-1 at ¶ 3; ECF No. 36-1 at ¶ 11). Upon earning the contract, Wesex contracted with a series of subcontractors; it would be Wesex's responsibility to pay the subcontractors. (ECF No. 3 at ¶¶ 6-8). Wesex would submit pay applications to CCL asking to be reimbursed for paying the subcontractors, pursuant to the contract. (ECF No. 9 at ¶¶ 15-16). Schrader regularly called CCL's Manager of Design and Construction Worldwide in Ohio about these pay applications to make sure they were going smoothly. (ECF No. 36-1 at ¶ 12). With these pay applications, Schrader executed affidavits promising that the subcontractors had been paid. (*Id.* at ¶ 16). CCL, relying on the veracity of these affidavits, continued work on the project and did not terminate Wesex as general contractor. (*Id.* at ¶ 15). However, CCL alleges that these affidavits turned out to be false and that Wesex was not paying its subcontractors. (*Id.* at ¶ 17). Subcontractors began complaining to CCL and filed actions in Ohio state courts. (*Id.*). Schrader spoke with CCL representatives in Ohio on the phone, promising that the issues were being cleared up, but CCL contends they never were. (*Id.* at ¶ 19). CCL also alleges that Wesex's failure to pay the subcontractors led to lawsuits being filed against CCL as the project manager and liens being placed on the project. (ECF No. 36 at 17).

## B. Procedural Background

The plaintiff in this lawsuit, Decker Construction Company ("Decker"), was one of the subcontractors allegedly not compensated by Wesex. Decker filed suit in the Licking County Court of Common Pleas against CCL for Unjust Enrichment and against Wesex for Breach of Contract, Unjust Enrichment, and violating Ohio's Prompt Pay Act. OHIO REV. CODE ANN. § 4113.61 (2011). CCL subsequently removed this case to federal court. CCL then filed an answer to Decker's Complaint (ECF No. 1; ECF No. 9) and filed a Third-Party Complaint against

Schrader, alleging fraudulent misrepresentation. (ECF No. 9). CCL also filed a Crossclaim

against Wesex (*Id.*) and a Counterclaim against Decker. (*Id.*).

Before this Court is Third-Party Defendant Schrader's Motion to Dismiss, in which he

argues he is not subject to personal jurisdiction in Ohio. (ECF No. 35). He also argues CCL fails

to state a claim for which relief can be granted.

## II.   LAW & ANALYSIS

### A. Personal Jurisdiction

#### 1. *Standard of Review*

The burden of proof for establishing personal jurisdiction always rests on the plaintiff.

*See CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996). When the defendant

moves to dismiss for lack of personal jurisdiction, the plaintiff must specifically establish

jurisdiction through an affidavit or some similar instrument and cannot just point to the pleadings

as evidence of the propriety of personal jurisdiction. *See Theunissen v. Matthews*, 935 F.2d 1454,

1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).

Without an evidentiary hearing for the issue of personal jurisdiction, the plaintiff just has to

make "'a prima facie showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.

2002) (quoting *Neogen Corp. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002))

(internal citation omitted). To meet this requirement, plaintiff must "'[establish] with reasonable

particularity sufficient contacts between [the Defendants] and the forum state to support

jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. Cal. Sav. & Loan

Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

When determining whether to grant a motion to dismiss under Rule 12(b)(2), the Court

must construe facts in the light most favorable to the non-movant. Most importantly, the Court

shall not consider any of the movant's assertions that contradict the plaintiff's. *See CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459). This rule serves to prevent defendants defeating personal jurisdiction by denying any facts plead related to jurisdiction. *See Id.*

Determining whether the underlying claims arise out of federal or state law is a court's threshold task. For federal claims, courts evaluate only whether due process is violated by applying personal jurisdiction. For state-law diversity claims, however, courts must also examine whether personal jurisdiction is valid under the applicable state law and then whether personal jurisdiction would violate the Due Process clause of the Fourteenth Amendment. *See Tharo Sys., Inc. v. cab Produkttechnik GmbH & Co. KG*, 196 Fed. Appx. 366, 369 (6th Cir. 2006) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002)). The Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits," and has "consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice'" when analyzing the propriety of personal jurisdiction under Ohio's long-arm statute. *Bird*, 289 F.3d at 871 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Thus, this Court's analysis will begin by determining whether CCL has established Schrader's personal jurisdiction under Ohio's long-arm statute before evaluating whether applying personal jurisdiction to Schrader would violate his due process rights guaranteed under the Fourteenth Amendment.

Ohio's long-arm statute extends personal jurisdiction to anyone who transacts business in Ohio. Ohio Rev. Code Ann. § 2307.382 (2019). According to the Ohio Supreme Court, "[The long-arm statute is] very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*,

559 N.E.2d 477, 480 (1990). "The word 'transact' used in the long-arm statute is broader than the term 'contract' and embraces in its meaning 'to carry on business' and 'to have dealings.'" *Franklin Prods., Inc. v. Gen. Nutrition Corp.*, No. 2:05-CV-1061, 2007 WL 2462665, at *4 (S.D. Ohio Aug. 27, 2007) (quoting *Mustang Tractor & Equip. Co. v. Sound Envt'l Serv., Inc.*, 727 N.E.2d 977, 981 (Ohio Com.Pl. 1999)). In *Kentucky Oaks*, the Supreme Court of Ohio held that transacting business included business negotiations, even if not completed. *See Id.* (citing *Transact*, BLACK'S LAW DICTIONARY (5th ed. 1979)) ("[A] commercial nonresident lessee, for purposes of personal jurisdiction, is "transacting any business" within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio."). In *Franklin Products*, a court in this district held that the third-party defendant transacted business in Ohio when he successfully negotiated contracts with the plaintiff, who was in Ohio that created a contractual obligation for the defendant to pay the plaintiff and it did not matter that the defendant never stepped foot in Ohio. *See Franklin Prods.*, 2007 WL 2462665, at *5. In *NPF XII, Inc. v. Special Care, Inc.*, a court in this district found that calling a business partner in Ohio on the phone regarding a business deal in Ohio and visiting the partner in Ohio constituted transacting business in Ohio. *See NPF XII, Inc. v. Special Care, Inc.*, 2001 WL 36951418, at *4 (S.D. Ohio July 17, 2001).

If the court finds that the non-movant is subject to personal jurisdiction of the forum state, it must next determine whether exerting personal jurisdiction would violate his or her rights under the Due Process clause to the Fourteenth Amendment of the United States Constitution. The Due Process clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). The

minimum contacts necessary to establish jurisdiction in the forum state must be "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe,* 326 U.S. at 316. The minimum contacts test may be satisfied by doing acts in the state that bring about a substantial connection with a state, or cause a known or expected consequence in the state. *See McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957). The minimum contacts requirement seeks to protect defendants "from the burden of litigating in an inconvenient forum" and prevent "the states from reaching out, through their courts, 'beyond the limits imposed on them by their status as coequal sovereigns in a federal system.'" *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988).

The Sixth Circuit has developed a three-part test for determining whether the particular circumstances in any case provide sufficient contact between a non-resident defendant and the forum state to support the exercise of personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). If the above criteria are satisfied, jurisdiction is appropriate if the facts of the particular case are such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe,* 326 U.S. at 316; *S. Mach.* 401 F.2d at 374. While this test established a useful analytical framework, each case must be determined on its particular facts. *See Velandra v. Regie Nationale des Usines Renault,* 336 F.2d 292, 295 (6th Cir.1964).

The first step of the three-part analysis enunciated in *Southern Machine* requires an inquiry into whether a defendant has acted or caused consequences within the forum state. This

step requires that the defendant "purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). In most cases, it is a common-sense inquiry as to "whether the defendant has transacted business within the forum state in the usual, commercial sense of 'doing business.'" *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988). This provision is designed to ensure that a plaintiff's unilateral activity will not "drag an unsuspecting and unwilling defendant into a foreign forum." *In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 226 (6th Cir. 1972). It is a "baseline" requirement that the defendant has become involved with the forum state through actions freely and intentionally done, which have effects in the forum state. *Id.* at 228.

The second part of the *Southern Machine* test requires an analysis of whether the plaintiff's cause of action arises out of or is related to the defendant's contacts with the forum state. The third part of the Southern Machine test requires inquiry into whether a defendant's conduct establishes a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach.,* 401 F.2d at 381. This analysis requires a determination whether the Court's exercise of jurisdiction would offend "traditional notions of fair play and substantial justice," *Int'l Shoe,* 326 U.S. at 316, and whether the defendant's conduct relating to the forum was such that he should reasonably anticipate being hauled into court here. *World–Wide Volkswagen,* 444 U.S. at 297. In reaching the decision on fair play and substantial justice, courts must consider such factors as the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies. *Am. Greetings Corp.,* 839 F.2d at 1169–70, citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 107 (1987). When the first

two elements of the *Southern Machine* test have been met, an inference arises that the third is also present. *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1126 (6th Cir.1982).

Schrader argues the Fiduciary Shield Doctrine should compel this Court to dismiss the claims against him. Under the Fiduciary Shield Doctrine, an individual officer of a corporation would not be subject to the forum state's personal jurisdiction merely because the corporation-employer is subject to the forum state's personal jurisdiction. *Leighton v. Poltorak*, No. 1:16-CV-2898-DAP, 2017 WL 1399839, at *6 (N.D. Ohio Apr. 19, 2017) (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000)). However, "[w]hen an individual defendant engages in solicitation and negotiations that give rise to a 'continuing obligation,' that defendant is not protected by the fiduciary shield doctrine and is subject to personal jurisdiction in the forum state." *Id.* at *7 (citing *Walker v. Concoby*, 79 F. Supp. 2d 827, 833 (N.D. Ohio 1999)).

## 2. *Analysis*

Schrader is subject to personal jurisdiction in Ohio. Schrader traveled to Ohio for a meeting related to the Project. (ECF No. 36-1 at 2). Like the defendants in *Franklin* and *NPF*, he regularly called the Manager of Design and Construction Worldwide for CCL in Ohio about pay applications. *See Franklin*, 2007 WL 2462665, at *5; *NPF*, 2001 WL 36951418, at *4; (ECF No. 36-1 at 2). He also spoke on the phone with CCL representatives in Ohio about the status of payments to contractors after contractors began complaining to CCL that they had not been paid and started filing claims in Ohio courts. (*Id.* at 4). Similar to the defendant in *Franklin*, CCL continued to work on the project in Ohio because of Schrader's allegedly false affidavits saying that Wesex was paying their contractors. (*Id.* at 3). Thus, Schrader's conduct is similar to the

conduct of defendants who were found to be transacting business in Ohio within the meaning of the long-arm statute. Accordingly, this Court concludes that that Schrader transacted business in Ohio and is subject to personal jurisdiction in Ohio under the Ohio long-arm statute.

Though both Schrader's motion (ECF No. 35) and CCL's response (ECF No. 36) discussed other provisions of the long-arm statute that could provide a basis for personal jurisdiction , there is no need to discuss these because this Court has found that Schrader met the requirement for transacting business in Ohio. *See Ky. Oaks*, 559 N.E.2d at 480 (holding that finding that the defendant transacted business in Ohio was enough to establish personal jurisdiction under the long-arm statute).

The next inquiry is whether exerting jurisdiction over Schrader would violate his rights under the Due Process Clause. This Court finds it would not. First, the requirement of purposeful availment is met. It has already been established that Schrader was transacting business in Ohio. The evidence also shows that Schrader performed all of the actions in questions freely and intentionally and that they had consequences in Ohio. Schrader submitted pay applications to CCL that allegedly contained false affidavits that are the subject of this suit. (ECF No. 36-1 at 2). These allegedly false affidavits had consequences in Ohio: the subcontractors filed claims in Ohio state courts alleging they had not been paid. (*Id.* at 5). Schrader argues that he did not intentionally defraud CCL, arguing he acted totally within the control of Wesex owner Gregory Koledin ("Koledin") and Chief Design Officer Melanie Panutsos ("Panutsos"). (ECF No. 35-1 at 1). Further, he claims he "had no independent knowledge with regard to the status and/or progress of any construction projects undertaken by Wesex. Rather, all such information was provided to [Schrader] by Koledin or Panutsos." (*Id.* at 2). However, he denied neither that he executed those payment applications nor that they led to consequences within Ohio. (*Id.*).

Schrader asserts facts that conflict with assertions made by CCL. Because this is a motion to dismiss for lack of personal jurisdiction, this Court does not "weigh the controverting assertions of the party seeking dismissal," *Theunissen*, 935 F.2d at 1459, and instead views the facts concerning jurisdiction as being consistent with those asserted by CCL. *See CompuServe*, 89 F.3d at 1262.

The second requirement, that the cause of action arose from Schrader's activities connected with Ohio, also is met here. This suit arose because Schrader allegedly made false affidavits about paying subcontractors in his payment applications sent to CCL for the project in Ohio. (ECF No. 36-1 at 3). Because the first two requirements have been met, this Court presumes that the third is also met: there is no compelling reason why Schrader would lack a substantial connection to Ohio, or why or applying personal jurisdiction to him would be unreasonable.

Schrader is not protected by the fiduciary duty rule because he regularly called and dealt with CCL representatives about the project in Ohio, including submitting payment applications. Further, his allegedly false affidavits on those payment applications created a continuing obligation for CCL to continue construction of the office building. (ECF No. 36-1 at 4). Thus, the Fiduciary Shield Doctrine does not apply here and Schrader is still subject to Ohio's Personal Jurisdiction.

### B.  Motion to Dismiss for Failure to State a Claim

#### 1.  *Standard of Review*

Third-Party defendant Mark Schrader moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under modern federal pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P.

8(a)(2). A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Iqbal*, 556 U.S. at 678. A complaint must thus "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In assessing the sufficiency and plausibility of a claim, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quotation omitted).

## 2. *Analysis*

Schrader argues in his Motion to Dismiss that CCL has failed to plead with particularity the fraudulent misrepresentation claim against him. (ECF No. 35 at 12). In Ohio, for a fraudulent misrepresentation claim to be successful, the plaintiff must establish:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987) (citing *Burr v. Stark Cty. Bd. of Commrs.*, 491 N.E.2d 1101 (Ohio 1986); *Cohen v. Lamko, Inc.*, 462 N.E.2d 407 (Ohio 1984)).

In its Third-Party Complaint, CCL asserted that Schrader sent false affidavits to CCL promising that all of the subcontractors had been paid. (ECF No. 9 at 17). This assertion fulfills the first requirement because it establishes that Schrader made a representation to CCL. As for the second, CCL specifically pleaded that "[t]he falsely executed affidavits…were…material to the transaction." (*Id.* at 18). CCL also pleaded that these affidavits were made falsely and that Schrader and the other Defendants knew they were false. (*Id.*). According to the Complaint, Schrader and the other Defendants intended to mislead CCL through the false affidavits to prevent CCL from discovering that the subcontractors were not being paid, which would lead to Wesex being terminated as general contractor. (*Id.* at 17-18). CCL pleaded that they justifiably relied on these false affidavits because they were "executed, sworn, and notarized by Wesex" and had no reason to suspect they were false. (*Id.* at 19). Finally, CCL pleaded that they were injured by this conduct because CCL would have been able to terminate Wesex if Wesex had not falsified the affidavits. In addition, the subcontractors have sued CCL and put Mechanic's Liens on the project. (*Id.*). Thus, CCL has pleaded sufficiently specific allegations against Schrader and has stated a claim upon which relief can be granted.

Schrader argues in his Motion to Dismiss that CCL waived their breach-of-contract claim against Wesex (that they also claim Schrader is personally liable for) by not raising objections to Wesex's "failure to include subcontractor lien waivers to at least 17 Applications for Payment." (ECF No. 35 at 13). In *Medchoice Financial, LLC v. Alliance Data Systems, Inc.*, a court in this district found that plaintiffs could not have waived their ability to sue for contract-breaching activity because "[defendant's] actions are more analogous to fraudulent inducement than fraudulent breach of contract in that they implicate a positive duty to avoid wrongful conduct that induces a party to continue its obligations under a contract when it would not otherwise have

done so." *MedChoice Fin., LLC v. ADS Alliance Data Systs., Inc.*, 857 F.Supp.2d 665, 672 (S.D. Ohio 2012). Simiarly, in *Cincinnati Gas & Electric v. General Electric Company*, a court in this district held that there was more than an allegation of breach when the defendant misrepresented the quality of technology being developed to fraudulently induce the plaintiff into paying for additional experimentation. *See Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 71-72 (S.D. Ohio 1986). Here, like the plaintiffs in these cases, CCL has alleged more than just breach of contract. CCL alleged in their Third-Party Complaint that Schrader and the other Defendants engaged in a scheme to steal money from CCL that was supposed to go to subcontractors and keep it for themselves. (ECF No. 9 at 17). Because the claim against Schrader involves allegations of allegedly fraudulent activity, it has not been waived by failing to object to the breach.

Although CCL alleges Schrader raises new facts in his Motion to Dismiss and therefore this Court should resolve it as a motion for summary judgment, these facts were not dispositive of the instant dispute and this Court finds no need to so construe the Motion.

### III.    CONCLUSION

For these reasons, Third-Party Schrader's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

___s/Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  June 24, 2019**