IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DECKER CONSTRUCTION CO.,** | : |
| | : |
| Plaintiff, | : |
| | : Case No. 2:18-cv-00727 |
| v. | : |
| | : |
| **WESEX CORPORATION,** *et al.*, | : |
| | : Chief Judge Algenon L. Marbley |
| Defendants, | : |
| | : |
| v. | : |
| | : Magistrate Judge Elizabeth P. Deavers |
| **GREGORY KOLEDIN,** *et al.*, | : |
| | : |
| Third-Party Defendants. | : |

**OPINION & ORDER**

This matter is before this Court on Third-Party Plaintiff CCL Label, Inc.'s ("CCL") Notice of Filing Affidavits in Support of Damages. (ECF No. 121). For the reasons stated below, this Court enters **JUDGMENT** for CCL, which is entitled to recover from Defendants, jointly and severally. Defendants Wesex Corporation and Gregory Koledin are **ORDERED** to pay to CCL $422,865 in damages, $217,903.64 in attorneys' fees, and $12,047.26 in costs. This award is subject to post-judgment interest at the federal statutory rate.

### I. BACKGROUND

Third-Party Plaintiff CCL hired Wesex Corporation ("Wesex"), whose President and CEO was Gregory Koledin, to perform design and construction services of a new production and office facility in New Albany, Ohio ("the project"). (ECF No. 9, ¶ 11). Wesex was obligated to "perform all design and construction services, and provide all material, equipment, tools and labor" necessary for the completion of the facility, per the parties' Design-Builder Agreement

1

("Agreement"). (*Id.* ¶¶ 11–12). Importantly, the Agreement required Wesex to submit to CCL fully executed lien waivers from Wesex and all subcontractors, sub-subcontractors, laborers, and material suppliers, which covered all work paid as a result for the previous month's application for payment. (*Id.* ¶ 15; ECF No. 9-3 ¶ 6.1.2). Wesex also was required to represent with each Application for Payment that the title to all work would pass to the owner free and clear of all claims, liens, encumbrances, and security interests upon Wesex's receipt of payment. (*Id.* ¶ 16; ECF No. 9-3 ¶ 6.1.4). Accordingly, Wesex was obligated to complete its work for CCL in a way that would not exceed the agreed contract price and would be free and clear of mechanics' liens by Wesex, as well as its subcontractors, sub-subcontractors, laborers, and material suppliers. (ECF No. 9, ¶ 17). The Agreement also obligated Wesex to defend and indemnify CCL against any claims or mechanics' liens brought against CCL or the project, including to obtain a release of any such claims or mechanics' liens within three days. (*Id.* ¶ 18). If Wesex failed to comply, the Agreement gave CCL the right to discharge the lien or claim and hold Wesex liable for the costs and expenses incurred. (*Id.*).

Each month, Wesex submitted an Application for Payment, which represented that it had covered the work performed by its subcontractors and the like. (*Id.* ¶¶ 22, 25). Wesex, however, was not paying its subcontractors, sub-subcontractors, laborers, and material suppliers with CCL's funds, but instead, paid itself nearly $1,000,000 in excessive, submitted affidavits falsely stating that Wesex had paid all of its subcontractors accordingly and that CCL was not exposed to any risk of claims, lawsuits, or liens. (*Id.* ¶¶ 26, 28–29, 40).

Numerous subcontractors and the like asserted claims against the CCL and recorded mechanics' liens. (*Id.* ¶ 39). Wesex also filed a mechanics' lien against the facility in July 2018. (*Id.* ¶ 41). That same month, Plaintiff Decker Construction Co., a subcontractor on the project,

2

filed a lawsuit, alleging a claim of unjust enrichment against CCL. (*Id.* ¶ 39; ECF No. 1). CCL filed its answer to the complaint and simultaneously filed a Third-Party Complaint against the Individual Defendants and a Crossclaim against Wesex. (ECF No. 9). CCL requested an entry of default on September 9, 2018 against Wesex and Mr. Koledin. (ECF Nos. 25–26). Default was promptly entered by the Clerk. (ECF No. 29). During the course of this litigation, mail to Mr. Koledin has been returned as undeliverable. (ECF Nos. 89, 91, 98–100, 103).

CCL sought a default judgment against Wesex and Mr. Koledin pursuant to Rule 55 of the Federal Rules of Civil Procedure for: (1) breach of contract; (2) fraud; (3) the remedy of piercing the corporate veil against Defendants; (4) slander of title; and (5) declaratory relief in the form of a judgment as it related to the mechanics' lien filed by Wesex against CCL. (ECF No. 116). This Court granted default judgment against Defendants for all counts on September 8, 2021. (ECF Nos. 117; 118). Initially, CCL requested a damages hearing, but following CCL's request to vacate the hearing and submit affidavits in support of damages instead, this Court vacated the hearing and CCL submitted a notice and affidavits in support of the damages sought. (ECF Nos. 119; 120; 121). Therefore, the issue of CCL's damages is ripe for review.

## II. STANDARD OF REVIEW

Having found default judgment proper, this Court must determine the appropriate measure of damages. Rule 55(b)(2) permits a court to conduct an evidentiary hearing to determine damages but does not require one. *See Vesligaj v. Peterson*, 331 Fed. App'x 351, 354–55 (6th Cir. 2009).

A court's determination of damages in a default judgment depends on whether the damages are calculable or liquidated. If the damages are calculable or liquidated, then the court will award the calculable damages to the plaintiff without an evidentiary hearing because the facts establishing the damage are not distinct from the facts establishing liability. *See United States v. Di Mucci*, 879

3

F.2d 1488, 1497-98 (7th Cir. 1989) (stating that an evidentiary hearing is not required if the damages are liquidated or can be definitively calculated from evidence and that in such cases the same facts establish the need for liability as well as damages); *Barnes v. Abraham, Inc.*, No. 2:17-CV-279, 2017 WL 5714091 at *2 (S.D. Ohio Nov. 28, 2017) (quoting *United States v. Parker-Billingsley*, No. 3:14-CV-307, 2015 WL 4539843, at *1 (S.D. Ohio Feb. 10, 2015)) ("A court may determine damages without holding an evidentiary hearing if the damages are 'capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'"). However, if the damages are unliquidated, the default judgment establishes only that the defendant is liable, and the plaintiff must prove damages. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (quoting *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1026 (5th Cir. 1982)). Typically, such cases will necessitate the court holding an evidentiary hearing where the court can evaluate the plaintiff's claims for damages, and the defendant can respond to such claims. *See Id.* at 110-11 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992)).

## III.  ANALYSIS

Plaintiffs seek four types of monetary compensation: (1) compensatory damages; (2) attorneys' fees; (3) costs incurred as a result of Wesex's and Koledin's fraud and breach of contractual duty to indemnify CCL; and (4) post-judgment interest. (ECF No. 121 at 3). Plaintiffs have provided evidence establishing the calculability of their damages, and thus this Court can determine the appropriate damages without an evidentiary hearing. *See Ironworkers Dist. Council of Southern Ohio v. Reinforcing Servs. Co., LLC*, No. 3:09–CV–067, 2009 WL 4154905, at *3 (S.D. Ohio Nov. 20, 2009) (finding that "the amount of unpaid employer contributions, interest

and liquidated damages are sums certain that can be calculated from the terms of the Trust Agreements.").

### A. Compensatory Damages

As a result of Wesex and Koledin's misconduct, fifteen subcontractors asserted claims against CCL seeking payment for work that CCL had already paid Wesex for and exceeded $1.5 million. (ECF No. 121-1 at 3–4). In addition to the claims, fourteen of the subcontractors recorded mechanics' liens against CCL's project. (*Id.* at 4). As a result, CCL secured surety bonds totaling $7,465 as substituted collateral to protect CCL's property. (*Id.*). Additionally, CCL settled all fifteen claims through confidential agreements for a total of $415,400. (*Id.*). Because the resolution of the claims and the surety bonds were for a lump sum or fixed costs, CCL incurred a total of $422,865 in damages for CCL's costs to settle the claims and bond off the subcontractors' lien. (*Id.* at 5). Therefore, CCL is entitled to $422,865 in damages.

### B. Attorneys' Fees and Costs

Ohio has long adhered to the "American rule" for recovery of attorneys' fees, which bars a prevailing party in a civil action from recovering attorneys' fees for litigation costs. *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009). Specifically, parties typically cannot recover attorney's fees: (1) in fraud cases where punitive damages are not awarded, *see WWSD, LLC v. Woods*, 188 N.E.3d 244, 268 (Ohio Ct. App. 10th Dist. 2022); nor (2) in slander of title actions where the fees were not necessary to counteract a disparaging publication, but only to prosecute the claim. S*ee Cupside Properties, Ltd. v. Earl Mechanical Servs.*, 53 N.E.3d 818, 828–29 (Ohio Ct. App. 6th Dist. 2015). Attorneys' fees can be recovered for breach of contract claims, however, where the parties bargained for a particular result and the breaching party's wrongful conduct led to legal fees being incurred—the situation present here. *Stonehenge Land Co. v. Beazer Homes*

*Invests., L.L.C.*, 893 N.E.2d 855, 869–70 (Ohio Ct. App. 10th Dist. 2008). As such, CCL can recover the proposed attorneys' fees from the breach of contract claim alone, because all claims stem from Wesex and Mr. Koledin's failure to comply with the parties' contractual agreement.

A district court has "broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring,* 36 F.3d 517, 531–32 (6th Cir. 1994), *cert. denied,* 514 U.S. 1127 (1995). A "reasonable fee is one that is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Dowling v. Litton Loan Servicing LP*, 320 Fed. App'x 442, 446 (6th Cir. 2009) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). When determining reasonable attorney fees, the court employs the "lodestar" method. *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The lodestar calculation begins with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To determine a reasonable hourly rate, this Court begins with the "prevailing market rate in the relevant community" which is defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command." *Adcock-Ladd v. Sec. of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 893 (1984)). Courts may determine prevailing market rate by reference to several sources "including affidavit[s], fee award studies, citations to prior precedent regarding reasonable rate adjudications, and the court's own expertise in recognizing reasonable applicable prevailing rates." *Ohio & Vicinity Carpenters' Fringe Ben. Funds, Inc. v. BCS Contractors, Inc.*, No. 5:12-cv-1565, 2015 WL 710955, at *2 (N.D. Ohio Feb. 18, 2015); *See also Bds. of Trustees of Ohio Laborers' Fringe Benefits Programs v. LA Williams Construction, LLC*, No. 2:16-CV-00304, 2017 WL 2858277, at *3 (S.D. Ohio July 5, 2017) (Marbley, J.). A court also may consider an attorney's own normal

billing rates to help calculate a reasonable fee. *Cincinnati Child. Hosp. Ret. Plan v. Wall*, No. 1:19-cv-831, 2020 WL 5797916, at *3 (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)).

CCL seeks a total of $222,770.04 in attorney's fees and $15,568.30 in costs. (ECF No. 121-2, ¶ 24). CCL submitted 121 pages of billing statements from June 2018 through October 2021 detailing the number of hours worked on this case and an accompanying affidavit by a partner at Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch"), attesting to the reasonableness of the billing rate and hours worked. (ECF No. 121-2). Jonathan Korinko, a partner at Benesch with about eleven years of experience as a litigator, appeared as counsel of record on CCL's behalf across three different cases brought against CCL by subcontractors and the like associated with Wesex's misconduct. (*Id.*; ¶ 12). The affidavit explains that Mr. Korinko expended over 508 hours of service across all three cases on behalf of CCL. (*Id.*). Mr. Korinko entered into an agreement with CCL that Benesch would charge a reduced rate of $316 per hour for the duration of the litigation. (*Id.*). That rate was subsequently increased to $365 per hour in May 2021, which was still a reduced amount compared to Mr. Korinko's standard rate of $465 an hour. (*Id.*). Additionally, CCL represents to this Court that four other Benesch attorneys and one litigation manager also performed discrete tasks making up 10% of the total billable time to CCL, which was billed at their customary billing rates. (*Id.*, ¶14).

This Court finds the attorneys' fees and costs fair and reasonable given the complexity of the litigation, representation across three separate cases, years of experience and credentials of the attorneys, and that the hourly rates are comparable to those charged by other law firms in Ohio conducting similar work. (ECF No. 121-2; ¶ 23); *see also Cincinnati Child. Hosp.*, 2020 WL 5797916, at *4 (finding reasonable $545/hour in attorney's fees for law partner specializing in employee benefits); *Tarrier Steel Co. v. Wesex Corp.*, No. 1:18-cv-0528, 2020 WL 2838607, at *2

7

(S.D. Ohio Jun.1, 2020) (finding reasonable and awarding attorneys' fees of $316/hour in a related action in which Mr. Korinko represented CCL against a different subcontractor as a result of Wesex's misconduct). Further, the itemized billing records provided are detailed sufficiently to assess their reasonableness, in that they "specify, for each entry, the date that the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific task completed." *Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). Each counsel's entries are listed separately and not lumped together and appear to be maintained contemporaneously with the work completed. *Id.* at 554. Additionally, the billing statements for the three different cases in which Benesch represented CCL are separated out and not combined. Therefore, CCL has provided sufficient information for this Court to conclude that the number of hours expended on these cases were reasonable and necessary to investigate the claims, file the claims, and obtain default judgment.

A thorough review and summation of the billing statements submitted as Exhibit A to CCL's notice (ECF No. 121), however, results in a total of $217,903.64 in attorneys' fees and $12,047.26 in costs. (ECF No. 121-2). This is less than the $222,770.04 in attorney's fees and $15,568.30 in costs CCL seeks pursuant to their notice and accompanying affidavits. (ECF No. 121-2, ¶ 24). Therefore, based on the evidence provided to this Court, CCL is entitled to $217,903.64 in attorneys' fees and $12,047.26 in costs.

### C. Post-Judgment Interest

CCL also requests post-judgment interest. In diversity cases, "federal law controls post-judgment interest" pursuant to 28 U.S.C. § 1961. *Estate of Riddle ex rel. Riddle v. Southern Farm Bureau Life Ins. Co.*, 421 F. 3d 400, 409 (6th Cir. 2005). Post-judgment interest applies to the entire award, including attorneys' fees and costs. *See Associated Gen. Contractors of Ohio, Inc. v.*

*Drabik*, 250 F.3d 482, 492 (6th Cir. 2001) ("There exists no reason, in either the language or history of § 1961, nor in binding precedent, that prevents this Court from holding that interest accrues on an attorney fee award from the judgment which unconditionally entitles the prevailing party to such fees.") *and Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 590 (holding that the post judgment interest statute requires payment of post judgment interest on an award of legal expenses). Therefore, this award is subject to post-judgment interest at the federal statutory rate.

Default Judgment was entered in favor of CCL on September 8, 2021. (ECF No. 118). The federal post-judgment interest rate for civil judgments entered September 6–12, 2021 was 0.07%. *Post Judgment Interest Rates*, JNET – Accounting, UNITED STATES COURTS (May 2022). Therefore, the post-judgment interest for the total award is $773.72 as 618 days have elapsed since judgement was entered in favor of CCL.

### D.  CONCLUSION

For the reasons set forth above, this Court enters **JUDGMENT** for CCL, which is entitled to recover from Defendants, jointly and severally. Defendants Wesex Corporation and Gregory Koledin are **ORDERED** to pay to CCL $422,865 in damages, $773.72 in post-judgment interest, $217,903.64 in attorneys' fees, and $12,047.26 in costs for a total award of $653,589.62.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 19, 2023**

9